**UNITED STATES of America, Appellee,**

v.

**Jose ORTEGA, Jesus Mancinas, Defendants–Appellants.**

**Nos. 746, 747, Dockets 95–1366, 95–1369.**

United States Court of Appeals, Second Circuit.

Argued Dec. 22, 1995.

Decided Aug. 30, 1996.

Barry E. Griffith, Rutland, Vermont (Griffith & Lundeen, P.C., of counsel), for Defendant–Appellant Jose Ortega.

Bradley S. Stetler, Burlington, Vermont (Stetler & Allen, of counsel), for Defendant–Appellant Jesus Mancinas.

David V. Kirby, Chief, Criminal Division, Office of United States Attorney, Rutland, Vermont (Charles R. Tetzlaff, United States Attorney, Gary G. Shattuck, Assistant United States Attorney, of counsel), for Appellee.

Before KEARSE, MAHONEY, and PARKER, Circuit Judges.

MAHONEY, Circuit Judge:

Defendants-appellants Jose Ortega and Jesus Mancinas appeal from judgments entered June 19, 1995 in the United States District Court for the District of Vermont, Franklin S. Billings, Jr., *Judge*, that convicted them, following guilty pleas, of conspiring to possess with intent to distribute and to distribute marijuana in violation of 21 U.S.C. §§ 846 and 841(a)(1). Ortega and Mancinas challenge the district court's calculation of their sentences pursuant to the United States Sentencing Guidelines (the "Guidelines"). Specifically, they contend that the district court (1) erroneously assessed a two-point enhancement of their base offense levels for possession of a firearm, and (2) incorrectly calculated their criminal history categories by considering prior misdemeanor convictions obtained in violation of their Sixth Amendment right to counsel.

Because the district court failed to make findings sufficient to support the firearm ad-

justments and incorrectly calculated Mancinas' criminal history category, we vacate defendants-appellants' sentences and remand for resentencing.

## Background

On July 27, 1994, defendants-appellants were indicted for their involvement, while residing together in the Brattleboro, Vermont area, in a marijuana distribution conspiracy. The indictment charged Mancinas and Ortega with one count of conspiring to possess with intent to distribute and to distribute marijuana between May 1992 and September 1993, as well as with substantive counts of marijuana distribution and possession. Mancinas and Ortega entered guilty pleas to the conspiracy count, and appeared together before the district court for sentencing on June 19, 1995.

In calculating defendants-appellants' offense levels under the Guidelines, the district court determined that the amount of marijuana attributable to the conspiracy was between forty and sixty kilograms, and accordingly set defendants-appellants' base offense levels at twenty. See USSG § 2D1.1(c)(10). Applying section 2D1.1(b)(1) of the Guidelines, which instructs the court to "increase by 2 levels" a defendant's offense level "[i]f a dangerous weapon (including a firearm) was possessed," the district court assessed each defendant-appellant a two-level upward adjustment in his respective offense level.

The weapon upon which the increase was predicated was a sawed-off shotgun that had been seized on March 16, 1992, during a lawful search by Vermont police officers of an apartment shared by Ortega, Mancinas, Michael Therrien, Jamie Guardado, and two other individuals. The search had been authorized following the arrest, earlier that day, of Therrien and Guardado for possession of marijuana in violation of Vermont law. Approximately one week after the shotgun was seized, Mancinas informed Vermont police officers that the weapon belonged to him.

Following other adjustments not relevant to this appeal, the district court set Ortega's offense level at 22 and Mancinas' offense level at 19. The court then proceeded to determine their criminal history categories.

In calculating Ortega's criminal history category, the district court assessed one criminal history point for a 1992 conviction for unlawful mischief, a misdemeanor under Vermont law. Ortega had pled guilty to the offense at a state court proceeding at which he had requested and had been denied the assistance of counsel. The state court imposed a 3–6 month suspended sentence, placed Ortega on probation, and ordered him to pay restitution, a $250 fine, and a $10 surcharge. A Vermont state court subsequently vacated all obligations associated with the suspended sentence and the probation, and Ortega never served any time in prison as a result of the conviction. The additional criminal history point, which was added to one other criminal history point for a total of two points, increased Ortega's criminal history category from category I to category II, thereby increasing his sentencing range (based on his offense level of 22) from 41–51 months to 46–57 months. See USSG ch. 5, pt. A (Sentencing Table).

In calculating Mancinas' criminal history category, the district court assessed one criminal history point for a 1992 conviction for disorderly conduct, a misdemeanor under Vermont law. Mancinas had pled guilty to the offense in a state court proceeding at which he had requested and had been denied the assistance of counsel. The state court imposed a 0–60 day suspended sentence and placed Mancinas on probation. Seven months later, Mancinas was convicted of driving while intoxicated ("DWI") in violation of Vermont law. Because the DWI conviction violated the terms of Mancinas' probation, the state court, following a hearing at which Mancinas was represented by counsel, revoked Mancinas' probation and ordered him to serve thirty days of the previously suspended sentence. The additional criminal history point for the disorderly conduct conviction, which was added to six other criminal history points for a total of seven points, increased Mancinas' criminal history category from category III to category IV, thereby increasing his sentencing range (based on his offense level of 19) from 37–46 months to 46–57 months. See id.

The district court sentenced both Mancinas and Ortega to forty-six months imprisonment, to be followed by a three-year term of supervised release. Defendants-appellants, who are currently serving their sentences, appealed.

## Discussion

### A. *The Firearm Adjustments.*

Mancinas and Ortega argue that the district court should not have enhanced their respective offense levels pursuant to section 2D1.1(b)(1) of the Guidelines because Mancinas' possession of the firearm occurred on and before March 16, 1992, prior to the May 1992 onset of the conspiracy for which defendants-appellants were convicted. Ortega further argues that he should not be held responsible for his coconspirator's possession of the firearm.

■ "The applicability of a specific offense characteristic, such as section 2D1.1(b)(1), depends on whether the conduct at issue is 'relevant' to the offense of conviction." *United States v. Pellegrini*, 929 F.2d 55, 56 (2d Cir.1991) (per curiam) (quoting USSG § 1B1.3). The Guidelines define relevant conduct as consisting of, *inter alia:*

(A) all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and

(B) in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity,

that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense[.]

USSG § 1B1.3(a)(1). Additionally, with respect to offenses "for which [the Guidelines] would require grouping of multiple counts," including the drug offenses in this case, *see* USSG § 3D1.2(d), relevant conduct includes "all acts and omissions described [in section 1B1.3(a)(1) ] that were part of the same course of conduct or common scheme or plan as the offense of conviction." USSG § 1B1.3(a)(2); *see also Pellegrini*, 929 F.2d at 56; *United States v. Kim*, 896 F.2d 678, 682 (2d Cir.1990).

■ The government bears the burden of proving that specified conduct is relevant to the offense of conviction. *See United States v. Vazzano*, 906 F.2d 879, 883 (2d Cir.1990); *see also United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir.) ("In the context of sentencing, if the government seeks increased punishment, it has the burden of proving that the circumstances warrant such an increase. *See, e.g., United States v. Font–Ramirez*, 944 F.2d 42, 49 (1st Cir.1991) (burden on government to prove sufficient facts for enhancements for, e.g., ... possession of firearms), *cert. denied*, [502 U.S. 1065, 112 S.Ct. 954, 117 L.Ed.2d 122] (1992)."), *cert. denied*, 506 U.S. 980, 113 S.Ct. 480, 121 L.Ed.2d 386 (1992). In the case of the section 2D1.1(b)(1) enhancement, "[t]he adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." USSG § 2D1.1, comment. (n.3).

■ For the weapons enhancement to apply to Mancinas, there was no requirement that the gun possession had to be linked to the charged conspiracy that commenced in May 1992 as long as "the weapon was possessed in connection with drug activity that was part of the same course of conduct or common scheme as the offense of conviction" within the meaning of section 1B1.3(a)(2). *United States v. Quintero*, 937 F.2d 95, 97 (2d Cir.1991). As we explained in *Quintero*, which involved a defendant who pled guilty to an act of cocaine distribution on May 16, 1989:

Since, with respect to drug offenses, "all such acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction" are relevant conduct, [USSG] § 1B1.3(a)(2), the gun possessed on June 14[, 1989] may result in a weapons adjustment if the gun was possessed in connec-

tion with drug activity and if the drug activity on June 14 was part of the same course of conduct or common scheme as the May 16 sale. Plainly both conditions are met. The June 14 encounter was one of a series of meetings in which [the defendant] either arranged to sell or actually sold crack to undercover detectives following introductions by the same informant, and the weapon was possessed as a security measure.

937 F.2d at 97–98.

■ Additional findings are necessary to justify the application of section 2D1.1(b)(1) to Ortega. The possession of the firearm by Mancinas is not automatically attributable to his coconspirator, Ortega. Rather, Ortega may be held responsible for possession of the firearm only if: (1) Ortega himself constructively possessed the weapon by having "dominion . . . or control over the item itself, or dominion over the premises where the item [was] located," *United States v. Snyder,* 913 F.2d 300, 304 (6th Cir.1990) (internal quotations omitted), *cert. denied,* 498 U.S. 1039, 111 S.Ct. 709, 112 L.Ed.2d 698 (1991); *see also Pellegrini,* 929 F.2d at 56 (enhancement warranted when weapons are present in same apartment where drugs are stored); *cf.* § 1B1.3(a)(1)(A) (relevant conduct includes "acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant"), or (2) Mancinas' " 'possession of the firearm was reasonably foreseeable to' " Ortega, *United States v. Stevens,* 985 F.2d 1175, 1188 (2d Cir.1993) (quoting *United States v. Soto,* 959 F.2d 1181, 1186 (2d Cir.1992)); *accord:* USSG § 1B1.3(a)(1)(B) (relevant conduct includes "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity").

■ With these principles in mind, we turn to the district court's application of section 2D1.1(b)(1) in the instant case. The district court found that Mancinas had possessed a firearm on and before March 16, 1992. However, it did not find that defendants-appellants were involved in drug activity at that time, or that any drug activity in which they were then involved was part of the same· course of conduct or common

scheme or plan as the later-occurring offense of conviction. Nor did the court make findings that would support the attribution of responsibility for the firearm to Ortega. Rather, the district court simply concluded that "a dangerous weapon was possessed" and it had not "been shown [that] it was clearly improbable that the weapon was connected to the offense." As explained above, however, it was necessary to make a prior determination that the asserted possession of a weapon occurred during conduct relevant to the offense of conviction before addressing the more particularized findings required by application note 3 to section 2D1.1 (regarding the presence of the weapon at the situs of the offense and the clear improbability of its connection to the offense) for the resolution of the possession issue.

"We have repeatedly stressed that a sentencing court must make specific factual findings in support of any offense-role enhancement." *United States v. Greenfield,* 44 F.3d 1141, 1147 n. 4 (2d Cir.1995); *see also* 18 U.S.C. § 3553(c) ("The court . . . shall state . . . the reasons for its imposition of [a] particular sentence. . . ."). The district court's findings in this case are insufficient to enable us meaningfully to review the propriety of the firearm adjustments. Accordingly, we vacate defendants-appellants' sentences and remand for further proceedings. *See United States v. Lanni,* 970 F.2d 1092, 1094 (2d Cir.1992) ("Because the record is unclear as to whether the court made [the necessary] findings . . ., we vacate the sentences and remand for precise findings on the issue and resentencing."). On remand, the district court should apply section 2D1.1(b)(1) if it finds that Mancinas and/or Ortega possessed the firearm during relevant conduct. We express no view as to whether the record evidence would support such findings.

B. *The Prior Uncounseled Misdemeanor Convictions.*

Mancinas and Ortega also challenge the district court's calculation of their criminal history categories. Both allege that the district court violated their Sixth Amendment right to counsel by assessing criminal history points for prior uncounseled state court mis-

demeanor convictions. Defendants-appellants argue that these state court convictions are invalid under *Scott v. Illinois,* 440 U.S. 367, 373–74, 99 S.Ct. 1158, 1162, 59 L.Ed.2d 383 (1979), because they resulted in sentences of probation and suspended sentences of imprisonment, and, in the case of Mancinas, whose probation was subsequently revoked, resulted in Mancinas being ordered to serve a portion of his suspended sentence of imprisonment. The government does not contest, and we accept, defendants-appellants' assertions that they were financially eligible for, and unavailingly sought, the assistance of court-appointed counsel at their state misdemeanor trials.

■ An indigent defendant on trial for a misdemeanor offense is not categorically entitled to the assistance of court-appointed counsel. Rather, "the Sixth and Fourteenth Amendments to the United States Constitution require only that no indigent criminal defendant be sentenced to a term of imprisonment unless the State has afforded him the right to assistance of appointed counsel in his defense." *Id.* Furthermore, although a criminal defendant enjoys the right not to have a conviction obtained in violation of his right to counsel used for sentence enhancement purposes in a subsequent proceeding,[1] "an uncounseled conviction valid under *Scott* may be relied upon to enhance the sentence for a subsequent offense." *Nichols v. United States,* 511 U.S. 738, ——, 114 S.Ct. 1921, 1927, 128 L.Ed.2d 745 (1994).

■ At the outset, we reject defendants-appellants' contention that their state court *convictions* are invalid. Under *Scott,* the Sixth Amendment protects an uncounseled misdemeanor defendant not from a judgment of conviction but from the imposition of certain types of sentences. The appropriate remedy for a *Scott* violation, therefore, is vacatur of the invalid portion of the sentence, and not reversal of the conviction itself. *See United States v. Reilley,* 948 F.2d 648, 654

(10th Cir.1991) (striking down portion of sentence imposed on uncounseled misdemeanor defendant that involved suspended term of imprisonment but affirming conviction and portion of sentence involving a fine); *United States v. White,* 529 F.2d 1390, 1394 (8th Cir.1976) (same). *But see United States v. Eckford,* 910 F.2d 216, 218 (5th Cir.1990) ("If an uncounseled defendant is sentenced to prison, the conviction itself is unconstitutional.") (dictum).

Whether defendants-appellants' prior state *sentences* are valid is relevant to this appeal, however, because the Guidelines measure the seriousness of a prior offense by reference to the severity of the sentence imposed. As relevant here, section 4A1.1(c) of the Guidelines provides that any misdemeanor conviction that carries a fine or term of imprisonment of less than sixty days is counted as a single criminal history point. Section 4A1.2(c)(1) provides an exception to this rule, however, specifying that certain offenses "and offenses similar to them" will not be counted unless "(A) the sentence [therefor] was a term of probation of at least one year or a term of imprisonment of at least thirty days, or (B) the prior offense was similar to an instant offense [for which sentence is to be imposed]."

■ With respect to Ortega's prior conviction for unlawful mischief, all obligations associated with his suspended sentence and probation had previously been vacated by a Vermont state court, and in any event played no role in the district court's sentencing decision in this case. Ortega's conviction and the monetary portion of his sentence were clearly valid under *Scott,* and were properly considered in his criminal history pursuant to *Nichols.* Further, because the offense of "unlawful mischief" does not fall within the purview of section 4A1.2(c)(1), Ortega was appropriately accorded one criminal history point pursuant to section 4A1.1(c) even

---

1. Although the Guidelines "do not confer upon the defendant any right to attack collaterally a prior conviction or sentence beyond any such rights recognized in law," USSG § 4A1.2, comment. (n.6), the failure to appoint counsel for an indigent criminal defendant, when required, is "a unique constitutional defect" justifying "the right to attack collaterally prior convictions used for sentence enhancement," *Custis v. United States,* 511 U.S. 485, ——, 114 S.Ct. 1732, 1738, 128 L.Ed.2d 517 (1994).

though he was ultimately subjected only to financial penalties for that offense.[2]

The criminal history point that Mancinas challenges, however, results from a prior conviction for disorderly conduct, an offense that is listed in section 4A1.2(c)(1). Thus, the district court was enabled to assess this criminal history point solely because Mancinas' sentence following the revocation of his probation was "a term of imprisonment of at least thirty days,"[3] thereby satisfying the requirement of section 4A1.2(c)(1)(A). If this portion of Mancinas' sentence is unconstitutional, then Mancinas' disorderly conduct conviction may not be counted under section 4A1.2(c)(1).

The government urges that *United States v. Castro–Vega*, 945 F.2d 496 (2d Cir.1991), *cert. denied*, 507 U.S. 908, 113 S.Ct. 1250, 122 L.Ed.2d 649 (1993), controls our disposition of Mancinas' challenge. In *Castro–Vega*, we held that when a misdemeanor defendant is sentenced to a term of probation and no jail term is imposed, no right to counsel attaches and the uncounselled conviction may be counted in determining the defendant's criminal history category. *Id.* at 499–500. The government contends that it would "make[ ] no sense" to hold that the Sixth Amendment allows the imposition of a probationary sentence, but forbids a court from revoking probation and imposing a sentence of imprisonment upon the defendant's violation of the terms of probation, or (the derivative implication directly applicable in this case) from considering the overall offense (including the prison term resulting from the revocation of probation) in assessing a defendant's criminal history for Guidelines purposes.

We recognize that there is some incongruity in a rule allowing a court to impose upon an uncounselled misdemeanor defendant a suspended sentence of imprisonment that can never be activated. This may be the unavoidable result of the case law in this area,

however, the "central premise" of which is "that actual imprisonment is a penalty different in kind from fines or the mere threat of imprisonment." *Scott*, 440 U.S. at 373, 99 S.Ct. at 1162. We think it significant that (so far as we aware) every court of appeals that has considered the issue has concluded that a defendant convicted of a misdemeanor offense following a proceeding at which he was denied counsel may not later be sentenced to imprisonment for that offense, even though the sentence of imprisonment would be imposed for the defendant's violation of the terms of his probation. *See Reilley*, 948 F.2d at 654 & n. 11; *United States v. Foster*, 904 F.2d 20, 21 (9th Cir.1990) ("When imposition of sentence has been suspended and probation has been revoked, the court may impose only the sentence it originally might have imposed."); *United States v. Sultani*, 704 F.2d 132, 133–34 (4th Cir.1983) (per curiam) ("[I]t is certainly clear that upon a violation of probation the jail sentence could not be made an active one when an indigent defendant had requested counsel and that claim was denied."); *White*, 529 F.2d at 1394.

We need not, however, resolve this question definitively. Whether or not Mancinas' sentence of imprisonment upon revocation of probation was constitutional under *Scott*, it did not warrant a criminal history point under the Guidelines. The commentary to section 4A1.2(c) of the Guidelines, which is authoritative here, *see Stinson v. United States*, 508 U.S. 36, 38, 113 S.Ct. 1913, 1915, 123 L.Ed.2d 598 (1993), states that "[p]rior sentences, not otherwise excluded, are to be counted in the criminal history score, including uncounseled misdemeanor sentences *where imprisonment was not imposed*." USSG § 4A1.2, comment. (backg'd.) (emphasis added). Although this provision does not expressly exclude uncounseled misdemeanor sentences in which imprisonment *was* imposed, the interpretive maxim *expressio unius est exclusio alterius*, coupled with

---

2. Under Vermont law, unlawful mischief, Vt. Stat. Ann. tit. 13, § 3701, deals with intentional damage to property and carries generally more serious penalties than disorderly conduct, *id.* tit. 13, § 1026, which deals with creation of public inconvenience or annoyance.

3. Section 4A1.2(k)(1) of the Guidelines specifies that "[i]n the case of a prior revocation of probation, ... [a sentencing court is to] add the original term of imprisonment to any term of imprisonment imposed upon revocation" in evaluating a prior conviction for purposes of assessing a defendant's criminal history.

the constitutional problems raised by such sentences, convinces us that section 4A1.2 excludes from criminal history computations all uncounseled misdemeanor sentences of imprisonment, including those imposed after the revocation of a defendant's probation. As we have noted, however, once Mancinas' sentence of imprisonment is excluded, what remains of his disorderly conduct offense no longer satisfies the requirements of section 4A1.2(c)(1)(A). The assessment of a criminal history point for that offense was therefore erroneous.

At sentencing, the district court stated, without elaboration, that "if there was [a Sixth Amendment violation, the court] would proceed under [section] 4A1.3 in connection with the adequacy of the history category and ... would arrive at the same point." We therefore consider whether Mancinas' additional criminal history point was justified under section 4A1.3 of the Guidelines, which states in pertinent part:

> If reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes, the court may consider imposing a sentence departing from the otherwise applicable guideline range....

> A departure under this provision is warranted when the criminal history category significantly under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit further crimes.... The court may, after a review of all the relevant information, conclude that the defendant's criminal history was significantly more serious than that of most defendants in the same criminal history category, and therefore consider an upward departure from the guidelines.

USSG § 4A1.3, p.s.

█ We review for clear error findings underlying a district court's determination that a criminal history category inadequately reflects the defendant's criminal background. *See United States v. Sturgis,* 869 F.2d 54, 57 (2d Cir.1989). Once again, however, it is difficult to conduct such a review in this case because the district court's ruling on the section 4A1.3 issue was so conclusory.

We note that when the criminal history point for the disorderly conduct conviction is omitted, the sentencing range for Mancinas (at an offense level of 19 and criminal history category of III) is 37–46 months. *See* USSG ch. 5, pt. A (Sentencing Table). When (as occurred below) it is included, on the other hand, the criminal history category increases to IV, resulting in a sentencing range of 46–57 months. *See id.* Thus, the 46–month sentence imposed upon Mancinas is valid under either category, and if the district court had stated that it would impose that sentence in any event (rather than that it would invoke section 4A1.3 if the criminal history point for the disorderly conduct conviction could not be counted), no appeal from that ruling would have been available. *See United States v. Bermingham,* 855 F.2d 925, 934–35 (2d Cir.1988).

Because it is arguably "unclear from the present record whether the district judge would have imposed the same sentence under the lower Guidelines range," *United States v. Rich,* 900 F.2d 582, 586 (2d Cir.1990), and because there must be a remand for resentencing in any event, we decline to provide a ruling on the section 4A1.3 issue that would amount to "a potentially advisory opinion," *Rich,* 900 F.2d at 586. If, on remand, the district court again elects to invoke section 4A1.3, it should articulate in some detail its reasons for doing so.

## Conclusion

Defendants-appellants' sentences are vacated, and the case is remanded to the district court for resentencing not inconsistent with this opinion.