**UNITED STATES of America,
Appellant,**

v.

**Damon SMITH, a/k/a "Shorty"; Eric Smith, a/k/a "Dog," Defendants-Appellees.**

**Docket Nos. 97–1683, 97–1685.**

United States Court of Appeals,
Second Circuit.

Argued Sept. 25, 1998.

Decided March 31, 1999.

Paul D. Silver, Assistant United States Attorney, Northern District of New York (Thomas J. Maroney, United States Attorney for the Northern District of New York, Albany, NY, of counsel), for Appellant.

F. Stanton Ackerman, Albany, N.Y. (Ackerman, Wachs & Finton, Albany, NY, of counsel), for Appellant Damon Smith.

Renee N. McLaughlin, Albany, NY, for Appellant Eric Smith.

Before: WINTER, Chief Judge, MESKILL and CALABRESI, Circuit Judges.

MESKILL, Circuit Judge:

Appellant, United States of America, appeals from judgments of conviction of the United States District Court for the Northern District of New York, Scullin, J., which sentenced appellee Eric Smith (Eric) to a term of imprisonment of seventy-five months for distribution of crack cocaine in violation of 21 U.S.C. § 841(a)(1) and his brother Damon Smith (Damon) to a term of fifty-seven months for conspiracy to distribute and possess crack cocaine pursuant to 21 U.S.C. § 846. On this appeal we must decide (1) whether the district court erred in concluding that each defendant satisfied the criteria of section 5C1.2 of the United States Sentencing Guidelines ("Guidelines" or "U.S.S.G."), and thus was entitled to a two-point offense level reduction under Guidelines section 2D1.1(b)(6), and (2) whether the district court erred in refusing to enhance Damon's offense level by two points, pursuant to Guidelines section 2D1.1(b)(1), based on the presence of firearms at his residence when he was arrested.

For the reasons that follow, we vacate the judgments of conviction and remand the cases for resentencing. On remand, the district court is instructed (1) not to afford Eric a two-level reduction under section 2D1.1(b)(6); and (2) to make specific findings as to (a) whether Damon satisfied the second and fifth criteria of section 5C1.2, and (b) whether Damon should have received a two-level enhancement pursuant to section 2D1.1(b)(1).

## BACKGROUND

The facts pertinent to this appeal are not in dispute. On February 12, 1997 a six-count indictment was returned against the defendants in the Northern District of New York. Count one charged them with conspiracy to distribute, and to possess with intent to distribute, crack cocaine, in violation of 21 U.S.C. § 846; counts two through five charged them with distribution of crack cocaine, in violation of 21 U.S.C. § 841(a)(1); and count six charged them with possession with intent to distribute crack cocaine, in violation of 21 U.S.C. § 841(a)(1). Finally, one count of the indictment sought forfeiture of Damon's Lexus automobile.

### Eric Smith

On July 16, 1997, pursuant to a written plea agreement, Eric entered a guilty plea to count five of the indictment charging him with a single distribution of crack cocaine. The Presentence Investigation Report (PSR) on Eric calculated a total offense level of thirty-one and a criminal history category of I, corresponding to an imprisonment range of 108–135 months. The government agreed to an adjustment of the offense level from thirty-one to twenty-nine, reducing the imprisonment range to 87–108 months. The PSR noted that Guidelines section 2D1.1(b)(6) might entitle Eric to a two-point reduction in his offense level if he were found to have satisfied all five criteria listed in section 5C1.2 (the provision more commonly known as the "safety valve").

At sentencing, the district court determined that Eric had complied with the requirements of section 5C1.2 and thus was entitled to a two-level decrease under section 2D1.1(b)(6). The government objected, contending that Eric's repeated refusals to communicate with the govern-

ment—a strategy apparently undertaken to avoid implicating his brother Damon—prevented Eric from satisfying the fifth safety valve criterion, which requires the defendant to have "truthfully provided to the Government all information and evidence [he] has concerning the offense or offenses" in question. U.S.S.G. § 5C1.2(5). Nevertheless, the district court, over the objection of the government, applied the two-point reduction. This reduced the total offense level to twenty-seven which, when combined with Eric's criminal history category of I, resulted in an imprisonment range of seventy to eighty-seven months. The court imposed a seventy-five month term of imprisonment.

### Damon Smith

On August 11, 1997, pursuant to a written plea agreement, Damon entered a plea of guilty to the conspiracy charged in count one and stipulated to the automobile forfeiture. Damon's PSR disclosed that on February 6, 1997 Damon was stopped by police and found to be in possession of nine grams of cocaine base. On that same day police executed a search warrant at Damon's residence, where they found three guns, ammunition, a scale and a razor blade, along with six grams of cocaine base in Damon's bedroom. Based on the firearms found in Damon's bedroom, the PSR recommended that his offense level be increased by two levels pursuant to Guidelines section 2D1.1(b)(1), which provides for such an enhancement "[i]f a dangerous weapon (including a firearm) was possessed."

Damon's sentencing hearing immediately followed Eric's. Perhaps emboldened by Eric's success with the safety valve, Damon's counsel sought the same two-level reduction based on sections 5C1.2 and 2D1.1(b)(6). The government objected and, while acknowledging that Damon had cooperated with the government, argued that he had not carried his burden of demonstrating that he had adequately provided complete and truthful information,

as required by the fifth criterion of section 5C1.2. Moreover, the government contended that because firearms were present in Damon's home—along with narcotics and related paraphernalia—he was in any event unable to satisfy the second 5C1.2 criterion, which precludes safety valve application in cases in which the defendant possessed a firearm "in connection" with the offense of conviction. U.S.S.G. § 5C1.2(2). Damon's counsel countered that the second criterion had been met because, even though weapons were present at the home, Damon neither owned the weapons nor used them in connection with the offense for which he was convicted.

Without addressing the government's objection or otherwise making factual findings, the district court granted Damon a two-point reduction based on sections 5C1.2 and 2D1.1(b)(6). Further, and again without making factual findings, the district court refused to levy a two-point enhancement based on section 2D1.1(b)(1).

Based on these rulings, the district court concluded that Damon's total offense level was twenty-five. This figure, combined with his criminal history category of I, led to a sentencing range of fifty-seven to seventy-one months. The court sentenced Damon to a fifty-seven month term of imprisonment.

### DISCUSSION

"[W]e review a district court's interpretation and application of the Guidelines *de novo*, and its findings of related fact for clear error." *United States v. Zagari*, 111 F.3d 307, 323 (2d Cir.) (citations omitted), *cert. denied*, —— U.S. ——, 118 S.Ct. 445, 139 L.Ed.2d 381 (1997).

### Eric's Sentence

"Generally, under the Sentencing Guidelines, a defendant who seeks to take advantage of a sentencing adjustment carries the burden of proof." *United States v. Gambino*, 106 F.3d 1105, 1110 (2d Cir. 1997) (citing *United States v. Shonubi*, 998 F.2d 84, 90 (2d Cir.1993)); *see also United States v. Flanagan*, 80 F.3d 143, 146 (5th Cir.1996) ("[A]s a general rule, the party

seeking the adjustment in the sentence is the party that has the burden of proving the facts to support the adjustment.").

Here, on its own motion, the district court ruled that Eric had satisfied all five safety valve criteria and accordingly was entitled to the two-point reduction established by section 2D1.1(b)(6). Section 2D1.1(b)(6) provides: "If the defendant meets the criteria set forth in subdivisions (1)-(5) of § 5C1.2 . . . and the offense level determined above is level 26 or greater, decrease by 2 levels."

To satisfy section 5C1.2, in turn, a defendant must not have

(1) more than one criminal history point; (2) used violence, or credible threats of violence, or possessed a firearm "in connection with the offense;" (3) committed an offense that resulted in death or serious injury; (4) been a leader or manager of others in the offense or been engaged in a continuing criminal enterprise; or (5) failed to provide to the government, prior to sentencing, all information and evidence he has concerning the offense or offenses that were part of the same course of conduct.

*United States v. Chen,* 127 F.3d 286, 290 (2d Cir.1997) (paraphrasing U.S.S.G. § 5C1.2).

■ At issue here is Eric's purported compliance with the fifth criterion, which essentially requires the defendant " 'to disclose all he knows concerning both his involvement and that of any co-conspirators.' " *United States v. Ortiz,* 136 F.3d 882, 883 (2d Cir.1997) (per curiam) (quoting *United States v. Ivester,* 75 F.3d 182, 184 (4th Cir.1996)) (affirming a lower court's refusal to invoke the safety valve where defendant merely had expressed intent to cooperate, but never met with or provided information to the government). At the sentencing hearing the government maintained that Eric could not meet the fifth safety valve criterion because he failed to cooperate with the government. In response, Eric asserted only that he was truthful and forthcoming during his presentence interview with the Probation Department; he offered no evidence that he was forthcoming with the government. Nonetheless, the district court, without making any factual findings, concluded that Eric satisfied the section 5C1.2 criteria and thus was entitled to a reduction under section 2D1.1(b)(6). On appeal, the government argues that the district court committed clear error. We agree.

Quite simply, the record in this case does not establish that Eric provided the requisite information to the government. To the contrary, Eric himself has conceded that he did not meet with or speak with anyone from the United States Attorney's office. The government has suggested that Eric willfully chose not to speak with any investigatory body so as not to implicate his brother Damon. Accordingly, the district court committed clear error when it concluded, implicitly, that Eric met his burden and demonstrated that he had "truthfully provided to the Government all information and evidence" he had concerning the offense in question, so as to satisfy section 5C1.2(5). As noted above, the "party seeking the adjustment in the sentence is the party that has the burden of proving the facts to support the adjustment." *Flanagan,* 80 F.3d at 146. Because Eric did not offer adequate evidence to establish compliance with section 5C1.2(5), he has failed to carry his burden of justifying the section 2D1.1(b)(6) adjustment. We need not decide whether information provided by a defendant to his probation officer that finds its way to and assists the prosecutor can satisfy section 5C1.2(5) because Eric failed to show that he provided sufficient information to his probation officer to satisfy the statutory provision. The district court's ruling on this aspect of Eric's sentence cannot stand. Eric's judgment of conviction is therefore vacated, and his case is remanded for resentencing with instructions not to afford Eric a two-level decrease under section 2D1.1(b)(6).

*Damon's Sentence*

The government also appeals Damon's sentence, which, like Eric's, not only in-

volved sections 2D1.1(b)(6) and 5C1.2, but also Guidelines section 2D1.1(b)(1).

*Section 2D1.1(b)(6)*

■ As in Eric's case, the government challenged Damon's ability to satisfy all five safety valve criteria necessary to receive a section 2D1.1(b)(6) adjustment. The determination of Damon's ability to satisfy the fifth safety valve criterion is more difficult than in Eric's case, partly because Damon did provide some information to the government before he was sentenced. As the government itself noted, that communication might bring him within the scope of section 5C1.2(5). Nonetheless, the district court failed to make adequate findings to justify the conclusion that this provision was satisfied. On this ground alone the case must be remanded for further proceedings.

Even putting that question aside, however, Damon faces a separate obstacle to application of the safety valve in his case. The second safety valve criterion, found in Guidelines section 5C1.2(2), restricts application of the safety valve to defendants who "did not ... possess a firearm or other dangerous weapon ... in connection with the offense." Because firearms were found at Damon's residence, along with the narcotics that formed the basis for the substantive offense, the government argued below that Damon "possess[ed] a firearm ... in connection with the offense" and was therefore ineligible for the safety valve.

Without addressing these open questions or otherwise making findings, the district court concluded that Damon was entitled to safety valve protection, and hence to an adjustment under section 2D1.1(b)(6).

We have consistently stressed the importance of factual findings at sentencing at the district court level. *See generally United States v. Ortega,* 94 F.3d 764, 768 (2d Cir.1996) (vacating and remanding because "[t]he district court's findings in this case are insufficient to enable us meaning-

fully to review the propriety of the firearm adjustments"); *United States v. Lanni,* 970 F.2d 1092, 1094 (2d Cir.1992) (finding the record unclear as to necessary findings and remanding "for precise findings on the issue and resentencing"). Because the district court failed to set out the basis for its conclusion, Damon's sentence must be vacated and the case remanded for resentencing with instructions to the district court to make specific findings as to whether Damon met his burden and adequately satisfied the safety valve criteria found in section 5C1.2.

*Section 2D1.1(b)(1)*

■ The government also appeals the district court's refusal to enhance Damon's sentence under Guidelines section 2D1.1(b)(1). That section instructs the courts to add two points to a defendant's offense level if a dangerous weapon was possessed in connection with unlawful trafficking, importing, exporting or manufacturing of drugs. *See* U.S.S.G. § 2D1.1(b)(1).

■ The initial inquiry when determining the applicability of specific offense characteristic provisions such as section 2D1.1 is whether the conduct at issue is relevant to the offense. *United States v. Pellegrini,* 929 F.2d 55, 56 (2d Cir.1991) (per curiam). The Guidelines consider drug offenses to be "aggregate harms," *see* U.S.S.G. § 3D1.2(d), and define relevant conduct to include all "acts and omissions described [in section 1B1.3(a)(1)] that were part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. § 1B1.3(a)(2). "The government bears the burden of proving that specified conduct is relevant to the offense of conviction." *Ortega,* 94 F.3d at 767; *see United States v. Vazzano,* 906 F.2d 879, 883 (2d Cir.1990); *see also United States v. Butler,* 970 F.2d 1017, 1026 (2d Cir.1992) ("In the context of sentencing, if the government seeks increased punishment, it has the burden of proving that the circumstances warrant such an increase.").

As the commentary to section 2D1.1 states, "[t]he [2D1.1(b)(6) ] adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1, comment. (n.3). This "clearly improbable" standard was employed in *Ortega*, 94 F.3d at 767, where co-defendants successfully appealed the district court's enhancement of their respective offense levels pursuant to section 2D1.1(b)(1). There, the district court concluded that the enhancement was proper because it was not "clearly improbable" that the weapon was used in connection with the offense. However, we reversed because the district court failed to make any inquiry or findings regarding the relevancy of the firearms to the offense of conviction. We concluded that additional findings were necessary regarding the presence of the weapon and the clear improbability of its connection to the offense. A similar situation exists in Damon's case, where the district court failed to make findings about the weapons' connection to the offense committed.

In *Pellegrini*, the defendant was convicted after pleading guilty to cocaine distribution. 929 F.2d at 55. His sentence was enhanced under section 2D1.1(b)(1) because a weapon was discovered where the drugs had been stored. *See id.* at 56. We determined that "[b]ecause storing drugs is 'relevant' to the offense for which Pelligrini was convicted, an upward adjustment based on the gun's presence was appropriate." *Id.* Much like Damon, the defendant in *Pellegrini* objected to the two-level enhancement, suggesting that the evidence did not indicate that the weapon was "possessed" by him at the time the cocaine was distributed. *See id.* We concluded that because the gun was present in the same apartment as the cocaine, it was "relevant" to the offense and justified the upward adjustment. *See id.*

Similarly, we have upheld weapons adjustments under section 2D1.1(b)(1) "when a weapon was present on the premises where the drugs were being stored, even if the evidence did not show that the weapon was 'possessed during commission of the offense.'" *United States v. Sweet,* 25 F.3d 160, 163 (2d Cir.1994) (citing *Pellegrini,* 929 F.2d at 56). The inference that a weapon found at or near the location of the offense was possessed in connection to a specific offense for 2D1.1(b)(1) purposes has been sustained in other cases where weapons were found in residential locations along with other evidence of the defendant's drug distribution. *See United States v. Wilson,* 11 F.3d 346, 355 (2d Cir.1993) (gun found in apartment where drugs stored and proceeds from drugs were kept); *United States v. Schaper,* 903 F.2d 891, 896 (2d Cir.1990) (gun found in a house where cocaine was stored and records of transactions were kept).

Here, the undisputed facts reveal that three handguns, assorted ammunition, six grams of cocaine base, a scale and a razor blade all were found in Damon's bedroom. As the cases cited above make clear, the proximity of the weapons to the drugs, for weapons possession purposes, may establish conduct relevant to the offense of conviction. In fact, application note 3 to section 2D1.1 specifically addresses these situations, instructing that "[t]he adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1, comment. (n.3). Findings as to whether Damon actually "possessed" the firearms are all the more important in light of our recent decision in *United States v. Ponce,* 168 F.3d 584 (2d Cir.1999) (per curiam), which questioned whether application note 3 permits enhancement as long as the firearm was present at the site of the offense—without a finding that the defendant actually possessed the firearm—or instead assumes an antecedent finding of "possession" and merely "directs attention to the problem of a gun that is possessed by a defendant but is not connected with a drug offense." *Id.* at 585.

Since the district court made no findings on this issue, we are unable to divine the basis for its refusal to apply the enhancement in the face of evidence that weapons were found at the scene of the drug distribution offense. We cannot determine if the district court implicitly credited Damon's assertion that he did not use or possess a weapon or a firearm in connection with the offense. As we have stated, " '[a] sentencing court is not bound to accept [a] defendant's self-serving characterizations of his role in an offense.' " *Gambino*, 106 F.3d at 1110 (quoting *Shonubi*, 998 F.2d at 90) (alteration in original).

As we have stressed repeatedly, "[f]actual findings must be made 'with sufficient clarity to permit appellate review,' " *id.* at 1111 (quoting *United States v. Reed*, 49 F.3d 895, 901 (2d Cir.1995)), and additional findings will be required where the reviewing court is unable to determine from the record the basis of the district court's ruling, *id.* Here, the district court made no factual findings, and we are unable to determine the basis for its refusal to apply section 2D1.1(b)(1). Accordingly, we remand for findings.

## CONCLUSION

Eric Smith's judgment of conviction is vacated and his case is remanded for resentencing. On remand, the district court should not afford Eric a two-level reduction under section 2D1.1(b)(6). Damon Smith's judgment of conviction is vacated and his case is remanded for resentencing. On remand, the district court should make specific findings as to (1) whether Damon satisfied the five criteria set out in section 5C1.2, and is entitled to a sentencing adjustment under section 2D1.1(b)(6), and (2) whether Damon should have received a two-level enhancement pursuant to section 2D1.1(b)(1).