**UNITED STATES of America,**
**Appellant,**

v.

**Damon SMITH, a/k/a Shorty,**
**Defendant-Appellee,**

**Eric L. Smith, a/k/a Dog, Defendant.**

**Docket No. 99–1589**

United States Court of Appeals,
Second Circuit.

Argued: May 4, 2000

Decided: May 25, 2000

Barbara D. Cottrell, Assistant United States Attorney, Northern District of New York, Albany, N.Y. (Daniel J. French, United States Attorney, Paul D. Silver, Assistant United States Attorney, Northern District of New York, Albany, NY, of counsel), for Appellant.

Jonathan Bach, Federal Defender Division, Legal Aid Society of New York, New York, NY, for Appellee.

Before: MESKILL and CABRANES, Circuit Judges, and TELESCA, District Judge.*

PER CURIAM.

On appeal from re-sentencing, the government argues that the United States District Court for the Northern District of New York, Scullin, *J.*, should have applied a two-level sentence enhancement pursuant to U.S.S.G. § 2D1.1(b)(1) for possession of a weapon in connection with a narcotics offense. The government argues that the district court clearly erred in finding that it was unclear whether defendant-appellee Damon Smith lived in the residence where weapons and drugs were found. Because Smith knew of the weapons' presence in his apartment during conduct relevant to his offense, we vacate the district court's judgment and remand with instructions to apply the enhancement unless it is clearly improbable that the weapons were connected with the offense.

This case was the subject of an earlier appeal by the government. *See United States v. Smith,* 174 F.3d 52 (2d Cir.1999). On February 6, 1997, Smith was stopped outside of 24 Crockett Avenue in Troy, New York. He was searched and found to be in possession of nine grams of cocaine base. When questioned, he told the police that there were drugs and drug paraphernalia in the 24 Crockett Avenue apartment. He also disclosed that there were two 9mm handguns and a .38 revolver in the apartment. That day, police executed a search warrant for the apartment. When the police arrived, they found Julius Perez flushing drugs down the toilet. They also found over a thousand dollars, drugs, drug paraphernalia, ammunition and three weapons matching the description given by Smith. In addition, they found Smith's driver's license on the dresser in the same bedroom as the weapons.

---

* Honorable Michael A. Telesca, United States District Judge for the Western District of New York, sitting by designation.

On August 11, 1997, pursuant to a written plea agreement, Smith pled guilty to conspiracy to distribute crack cocaine, in violation of 21 U.S.C. § 846. At sentencing, the district court determined that Smith was eligible for a two-point sentence reduction under the "safety-valve" provisions of U.S.S.G. § 2D1.1(b)(6) and that he was not subject to the weapons enhancement under U.S.S.G. § 2D1.1(b)(1).[1] The district court did not make any findings with respect to either determination. The government appealed. We vacated Smith's sentence and remanded the matter to the district court for specific findings concerning the applicability of the safety valve and "whether [Smith] should have received a two-level enhancement pursuant to section 2D1.1(b)(1)" for possession of a weapon in connection with a narcotics offense. *Id.* at 59. On remand, after a hearing, the district court found that the record was "unclear as to who specifically possessed the weapons" in question and, accordingly, refused to apply the weapons enhancement. The district court also found Smith ineligible for the safety valve. Smith was sentenced to 70 months in prison. On this second appeal, the government challenges the district court's failure to apply the weapons enhancement against the defendant.

## DISCUSSION

■■■ We review the district court's interpretation and application of the Sentencing Guidelines *de novo,* and its findings of related fact for clear error. *See United States v. Zagari,* 111 F.3d 307, 323 (2d Cir.1997). Here, the district court made the following factual findings concerning the applicability of the weapons enhancement: (1) that it was unclear who specifically possessed the weapons in question, (2) that the testimony did not clearly establish who occupied the bedroom where the weapons were found, and (3) that it remained unclear who actually resided at the address where the weapons were found. However, as the government notes, the district court's findings ignore key facts clearly established by the presentence investigation report (PSR) and undisputed or admitted by the defendant throughout the first sentencing proceedings and appeal therefrom.

Specifically, the PSR in this case established that (1) while under police surveillance and after receiving a phone call from a confidential informant, Smith left his residence at 24 Crockett Avenue, (2) Smith was arrested shortly thereafter and found in possession of cocaine base, (3) following his arrest Smith told DEA agents that there were two 9mm handguns and a .38 revolver inside his residence, and (4) guns matching the description given by Smith, along with ammunition, cocaine base, a tanita scale and razor blade, and $1,240 in United States currency were found in Smith's bedroom. The PSR also states that "at the time of the defendant's arrest he admitted to law enforcement officials that he possessed three handguns at his apartment at 24 Crockett Avenue." Smith did not object—either at his initial sentencing hearing or in the body of the Addendum to the PSR—to the inclusion of any of these facts in the PSR. This is significant because Smith did challenge the inclusion of 3.6 grams of cocaine base (which Perez was found flushing down the toilet during the search in question) in his offense level, and did acknowledge the presence of the three handguns while simultaneously insisting that he "never used a firearm in any drug transaction." Indeed, in his brief in the first appeal, Smith stated: "Damon Smith lived at the Crocket [sic] Avenue Apartment with Perez." Moreover, our opinion in that case specifically noted that "the undisputed facts reveal that three handguns, assorted ammunition, six grams of cocaine base, a scale and a razor blade all were found in Damon [Smith's] bedroom." *Smith,* 174 F.3d at

---

1. Smith was sentenced with his brother, Eric Smith. Both defendants were part of the original appeal. Eric Smith is no longer before this Court.

58. It was not until after his first sentence was vacated and remanded that the issue arose as to who actually resided at 24 Crockett Avenue at the time of Smith's arrest. At that time, the government pointed out that the defendant had failed to raise any objection to the calculations or factual statements in the PSR at the time of his initial sentencing hearing or during the ensuing appeal. The district court, however, disregarded this information, noting that "I don't think that weighs in heavily with respect to the Court's findings whether he objected or didn't object."

Because the facts set forth in the PSR, and accepted and admitted by Smith throughout his first sentencing proceeding and the first appeal, clearly demonstrate that Smith resided at 24 Crockett Avenue, we conclude that the district court's failure to find that Smith actually resided at the address where the weapons were found was clearly erroneous.

Moreover, we conclude that, irrespective of whether Smith personally owned the weapons in question or slept in the room where the weapons were found, the weapons enhancement is still applicable, unless "it is clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1, cmt. (n.3). The applicability of specific offense characteristics such as the possession of weapons during a narcotics offense is governed by the relevant-conduct sentencing guideline. *See* U.S.S.G. § 1B1.3(a); *United States v. Quintero,* 937 F.2d 95, 97 (2d Cir.1991); *United States v. Pellegrini,* 929 F.2d 55, 56 (2d Cir.1991) (per curiam). With respect to drug offenses, relevant conduct consists of "all acts and omissions ... that were part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. § 1B1.3(a)(2); *see Pellegrini,* 929 F.2d at 56. Here, guns were found in the same room as cocaine base and paraphernalia used to cut and weigh cocaine. Because the storing and cutting of drugs is "relevant" to the offense of narcotics trafficking, we have held that a

section 2D1.1(b)(1) enhancement is applicable in cases where a weapon is present on the premises where drugs are stored. *See United States v. Sweet,* 25 F.3d 160, 162–63 (2d Cir.1994) (guns found in trailer that defendant used to store and cut drugs, although no drugs or drug paraphernalia were found in the trailer at the time of the search); *United States v. Schaper,* 903 F.2d 891, 896 (2d Cir.1990) (holding that where defendant stored narcotics in his house and used the house to arrange narcotics deals, "[t]he presence of a weapon on [defendant's] premises cannot be said to be unrelated to the ongoing narcotics trade"); *see also United States v. Mc-Donald,* 121 F.3d 7, 10 (1st Cir.1997) ("[W]hen the weapon's location makes it readily available to protect either the participants themselves during the commission of the illegal activity or the drugs and cash involved in the drug business, there will be sufficient evidence to connect the weapons to the offense conduct." (internal quotation marks omitted)); *United States v. Atterson,* 926 F.2d 649, 663 (7th Cir. 1991) (holding that district court erred in failing to apply weapons enhancement where two loaded handguns were found stored with large sums of cash, in home strewn with drugs). Indeed, we have upheld the application of a section 2D1.1(b)(1) enhancement when the defendant lacked personal knowledge of the weapon's existence on the premises where drugs were being processed, as long as the possession of firearms by the others involved in the offense was reasonably foreseeable to the defendant. *See United States v. Soto,* 959 F.2d 1181, 1186–87 (2d Cir.1992); *see also* U.S.S.G. § 1B1.3(a)(1)(B) (relevant conduct includes, "in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise ... whether or not charged as a conspiracy), all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity").

Much has been made of the significance of Application Note 3 of section 2D1.1, which states that the enhancement "should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense," U.S.S.G. § 2D1.1, cmt. (n.3), and our decision in *United States v. Ponce,* 168 F.3d 584 (2d Cir.1999) (per curiam), which questions whether the application note (1) allows the enhancement as long as the firearm was present at the site of the offense (in *Ponce,* the wheel-well of a car in which defendant was a passenger), without a finding that the defendant actually possessed the firearm, or (2) assumes a finding of possession and addresses only the problem of a gun that is possessed by a defendant but is not connected with a drug offense. *Id.* at 585. However, as the above-cited cases suggest, our case law indicates that once the government has established that a weapon's presence was reasonably foreseeable to the defendant during conduct (*i.e.,* the storage and cutting of drugs) relevant to the offense (*i.e.,* distribution of drugs) at issue, the enhancement will apply, *see United States v. Ortega,* 94 F.3d 764, 768 (2d Cir.1996), unless the defendant demonstrates that it is clearly improbable that the weapon was connected with the drug offense. *See McDonald,* 121 F.3d at 10; *see also United States v. Vaziri,* 164 F.3d 556, 568 (10th Cir.1999) (once government satisfies initial burden of demonstrating that a weapon was possessed during relevant conduct, "[t]he enhancement is then appropriate unless the defendant proves the exception—that it is clearly improbable the weapon was connected with the offense"). In this case, the record evidence demonstrates that, at the very least, Smith knew of the presence of the handguns at his residence, where he also kept cocaine base and drug paraphernalia. Thus, unless it is clearly improbable that the weapons were connected with the offense, the enhancement must be applied.

The district court clearly erred in not finding that Smith lived at 24 Crockett Avenue. This error, coupled with the findings that Smith did not specifically possess the weapons or sleep in the bedroom where the weapons were found, provided the basis for the district court's decision not to apply the enhancement. Thus, the district court never reached the question of whether it was "clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1 cmt. (n.3). Remand is necessary for the district court to make this determination.

## CONCLUSION

The judgment is vacated, and the cause is remanded to the district court to determine whether it was clearly improbable that the weapons found in Smith's apartment were connected with the offense. Unless that determination favors Smith, the enhancement must be applied. We leave to the district court the decision whether a new sentencing hearing is needed.