**UNITED STATES of America,
Appellee,**

v.

**Derrick SMYTHE, also known as
"D," Defendant–Appellant.**

No. 03–1605.

United States Court of Appeals,
Second Circuit.

Argued: March 26, 2004.

Decided: April 1, 2004.

John–Claude Charbonneau, Assistant United States Attorney (David V. Kirby, First Assistant United States Attorney, on the brief), for Peter W. Hall, United States Attorney for the District of Vermont, for Appellee.

Thomas A. Zonay, Ford & Zonay, P.C., Woodstock, Vt., for Defendant–Appellant.

Before: MESKILL, KATZMANN, and WESLEY, Circuit Judges.

PER CURIAM.

We here make clear that a defendant possesses a dangerous weapon within the meaning of U.S.S.G. § 2D1.1(b)(1) when he trades drugs for guns.

## BACKGROUND

Defendant-appellant Derrick Smythe pled guilty to conspiring to distribute crack cocaine in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(B), and he now appeals his sentence. Along with his co-defendants, Smythe was a reputed crack cocaine dealer in the Rutland, Vermont area. Together, they expressed interest to undercover agents in exchanging crack cocaine, which they had, for firearms. The four defendants, including Smythe, met with an undercover agent in Burlington, Vermont. After each defendant handled and examined each of 11 firearms, Smythe handed the agent a bag containing 22 grams of crack. Smythe then opened the trunk of his car, and a co-defendant took possession of the bag containing all 11 firearms and placed it in Smythe's trunk. The defendants were subsequently arrested. At sentencing following his guilty plea, the district court (Murtha, J.) found, over Smythe's objection, that Smythe "possessed" a firearm within the meaning of U.S.S.G. § 2D1.1(b)(1) and enhanced his offense level by two points.

## DISCUSSION

■ "We review the district court's interpretation and application of the Sentencing Guidelines de novo, and its findings of related fact for clear error." United States v. Smith, 215 F.3d 237, 239 (2d Cir.2000) (per curiam). The Guidelines provide that, in cases involving drug offenses, a sentencing court should raise a defendant's base offense level by two points "[i]f a dangerous weapon (including a firearm) was possessed." U.S.S.G. § 2D1.1(b)(1). As the "authoritative," Stinson v. United States, 508 U.S. 36, 38, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993), commentary to the Guideline provides, "[t]he adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense," U.S.S.G. § 2D1.1 cmt. n. 3. Accordingly, "once the government has established that a weapon's presence was reasonably foreseeable to the defendant during conduct ... relevant to the offense ... at issue, the enhancement will apply, unless the defendant demonstrates that it is clearly improbable that the weapon was connected with the drug offense." Smith, 215 F.3d at 241 (citation omitted). Characteristic of that reasoning, we have previously upheld the application of this enhancement where a gun was found in the apartment where the defendant merely stored his narcotics, see United States v. Pellegrini, 929 F.2d 55, 56 (2d Cir.1991) (per curiam), or conducted drug transactions, see United States v. Rodriguez–Gonzalez, 899 F.2d 177, 182–83 (2d Cir.1990), and we have denied relief under the "safety valve" of U.S.S.G. § 5C1.2(a)(2) where the defendant received guns as collateral for drugs because, on those facts, he "possessed" the weapons "in connection with the offense," see United States v. DeJesus, 219 F.3d 117, 122 (2d Cir.2000) (per curiam) (internal quotation marks omitted).

■ The act of trading drugs for guns is certainly conduct relevant to the charged offense of conspiring to distribute narcotics, and given the nature of the transaction arranged with the undercover agent, the presence of the firearms was indisputably foreseeable. Smythe argues, however,

that the policy behind the enhancement, which "reflects the increased danger of violence when drug traffickers possess weapons," U.S.S.G. § 2D1.1. cmt. n. 3, does not support an enhancement on the facts of this case. In the defendant's view there is "no dispute that no danger existed, or could have existed" because "it was the agent who brought the [unloaded] guns to the scene and maintained control of them until after the drugs were delivered." Appellant's Br. at 10.

The Guideline is a *per se* rule that does not require a case-by-case determination that firearm possession made a particular transaction more dangerous. In any event, the dangerous-weapon enhancement reflects the understanding that the mere presence of firearms in connection with a drug transaction can increase the risk of violence. Indeed, "[t]he mere presence of a gun, *loaded or not,* can escalate the danger." *United States v. Mitchell,* 31 F.3d 271, 278 (5th Cir.1994) (emphasis added). This is so not only because an unloaded firearm may quickly and easily be loaded and used—or "converted instantaneously from currency to cannon," *Smith v. United States,* 508 U.S. 223, 240, 113 S.Ct. 2050, 124 L.Ed.2d 138 (1993) [1]—but

also because the presence of a firearm may increase the risk that others will react in violent ways. As the D.C. Circuit has explained, "because the mere 'display of a gun instills fear in the average citizen' and 'as a consequence ... creases an immediate danger that a violent response will ensue,'" offense-level enhancements are warranted even where a weapon is unloaded or *inoperative. United States v. Burke,* 888 F.2d 862, 869 (D.C.Cir.1989) (quoting *McLaughlin v. United States,* 476 U.S. 16, 17–18, 106 S.Ct. 1677, 90 L.Ed.2d 15 (1986)).

We see no reason why courts applying U.S.S.G. § 2D1.1(b)(1) should "draw a fine metaphysical distinction between a gun's role in a drug offense as a weapon and its role as an item of barter; it creates a grave possibility of violence and death in either capacity," *Smith,* 508 U.S. at 240, 113 S.Ct. 2050, and we join our sister Circuits in holding that the quid pro quo exchange of drugs for firearms triggers the enhancement of § 2D1.1(b)(1), *see United States v. Rogers,* 150 F.3d 851, 858 (8th Cir.1998); *United States v. Gibson,* 135 F.3d 1124, 1128 (6th Cir.1998); *see also United States v. Castillo,* 979 F.2d 8, 9–11 (1st Cir.1992) (affirming enhancement

---

**1.** The Supreme Court in *Smith* held that a defendant "uses" a firearm within the meaning of 18 U.S.C. § 924(c)(1) when he trades a gun for narcotics. We take some guidance from cases involving 18 U.S.C. § 924(c)(1), which makes it a crime to "use[ ]" a firearm "during and in relation to any ... drug trafficking crime." We have recently held that a defendant "uses" a firearm within the meaning of § 924(c)(1) when he holds a firearm as collateral for the advance of crack cocaine. *United States v. Cox,* 324 F.3d 77, 83–84 (2d Cir.2003); *see also Bailey v. United States,* 516 U.S. 137, 148, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995) ("The active-employment understanding of 'use' certainly includes brandishing, displaying, *bartering,* striking with, and, most obviously, firing or attempting to fire a firearm." (emphasis added)). The "use" of a

firearm necessarily requires its possession, *see Bailey,* 516 U.S. at 143, 116 S.Ct. 501 ("'[U]se' must connote *more than mere possession* of a firearm by a person who commits a drug offense." (emphasis added)); *Cox,* 324 F.3d at 84 n. 2 (remarking that "trading drugs for a gun will probably result in ... possession"), and so that which counts as "use" within § 924(c)(1) would seem to include "possession" for purposes of § 2D1.1(b)(1).

Whether, when it comes to "use" of a firearm, we should distinguish the receipt of guns for drugs (this case) from the receipt of drugs for guns, as we suggested in *Cox, see* 324 F.3d at 83, either situation involves the "possession" of a firearm (if not its "use") in connection with the offense and triggers the enhancement under U.S.S.G. § 2D1.1(b)(1).

where the defendant contemporaneously sold a firearm to an undercover officer along with three ounces of cocaine base).

CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.