**UNITED STATES of America, Appellee,**

v.

**William LOEB, Defendant–Appellant.**

No. 398, Docket 93–1884.

United States Court of Appeals,
Second Circuit.

Argued Nov. 17, 1994.

Decided Jan. 30, 1995.

B. Alan Seidler, Nyack, NY, for defendant-appellant.

Brian D. Coad, Asst. U.S. Atty., S.D.N.Y. (Mary Jo White, U.S. Atty., S.D.N.Y., Guy Petrillo, Asst. U.S. Atty., S.D.N.Y., on the brief), for appellee.

Before: OAKES, ALTIMARI and WALKER, Circuit Judges.

ALTIMARI, Circuit Judge:

Defendant-appellant William Loeb appeals from a judgment of conviction and sentence entered in the United States District Court for the Southern District of New York (Sand, J.), following a plea of guilty to one count of embezzlement of union funds in violation of 29 U.S.C. § 501(c) (1988) and 18 U.S.C. § 2 (1988), and one count of embezzlement of welfare funds in violation of 18 U.S.C. §§ 664 and 2 (1988). The district court sentenced Loeb to a term of 71 months' imprisonment, followed by a three-year term of supervised release. Additionally, the district court ordered the payment of restitution in the amount of $494,482.

On appeal, Loeb challenges his sentence. Specifically, Loeb contends that the district court erred when it: (1) denied him credit for acceptance of responsibility and imposed an enhancement for obstruction of justice; (2) overstated his criminal history category; and (3) imposed consecutive periods of incarceration on the counts of conviction. Finding no

error, we affirm the district court's judgment for the reasons set forth below.

## BACKGROUND

On March 4, 1993, pursuant to a written plea agreement with the government, Loeb pleaded guilty to Counts Two and Thirteen of a fourteen-count indictment. Count Two charged Loeb with embezzlement of approximately $20,000 from the funds of Consolidated Local Union 867 (the "Union"), in or about December 1989, through the drawing of a check on the Union account for unauthorized purposes, in violation of 29 U.S.C. § 501(c) and 18 U.S.C. § 2. Count Thirteen charged Loeb with embezzlement of approximately $99,959 from the funds of the Consolidated Welfare Fund, an employee welfare benefit plan subject to Title I of the Employee Retirement Income Security Act of 1974, in or about October 1990, through a scheme involving an inflated construction contract and kickbacks from the contractor, in violation of 18 U.S.C. §§ 664 and 2. Each count carried a statutory maximum of 60 months' incarceration.

In the plea agreement, the government and Loeb agreed to a series of Sentencing Guidelines stipulations. *See* U.S.S.G. § 6B1.4. Pursuant to U.S.S.G. § 3D1.2(d) and § 3D1.3(b), the two counts were grouped together, resulting in a stipulated base offense level of 4 for both Counts to which Loeb pleaded guilty. *See* U.S.S.G. § 2B1.1. The parties stipulated to an additional four-level increase because the offenses involved more than minimal planning, *see* U.S.S.G. § 2B1.1(b)(5)(A), and because Loeb abused a position of trust, *see* U.S.S.G. § 3B1.3. The parties also stipulated to an eleven-level increase in the offense level because the amount of loss involved, pursuant to U.S.S.G. § 1B1.3 and § 2B1.1(b)(1)(L), was $494,482. The parties agreed that if Loeb entered a guilty plea and demonstrated "a recognition and affirmation of personal responsibility for his criminal conduct," a three-level decrease in Loeb's offense level would be warranted pursuant to U.S.S.G. §§ 3E1.1(a) and (b)(2), resulting in an adjusted offense level of 16. With regard to Loeb's criminal history category, the parties agreed, "based upon information currently available," that pursuant to U.S.S.G. § 4A1.1, Loeb was in criminal history category IV. Following Loeb's guilty plea, the district court reduced the cash requirement to secure Loeb's bail as well as reduced his electronic monitoring, ordered a presentencing investigation, and scheduled sentencing for September 7, 1993.

On August 5, 1993, Loeb jumped bail. Loeb purchased an airline ticket under an assumed name and travelled to Arizona. On August 6, 1993, the district court (Martin, J.) issued a bench warrant for his arrest. Following a 39–day nationwide search by law enforcement agents, Loeb was arrested in Arizona, where he was residing and receiving public assistance under an assumed name.

Following Loeb's arrest in Arizona, the Probation Department prepared a revised presentence investigation report ("PSR"). In its revised PSR, the Probation Department adhered to the stipulations in the plea agreement with respect to the base offense level, the calculation of loss, abuse of position of trust, and more than minimal planning. As a result of Loeb's bail-jump and failure to appear for sentencing on September 7, 1993, the Probation Department recommended that the district court deny an adjustment for acceptance of responsibility, *see* U.S.S.G. § 3E1.1, comment. (n. 4), and impose a two-level enhancement for obstruction of justice, *see* U.S.S.G. § 3C1.1, comment. (n. 3). Based on an adjusted offense level of 21 and a criminal history category of IV, the Probation Department recommended a sentencing range of 57 to 71 months' imprisonment.

On December 10, 1993, the district court accepted the findings of the PSR, and sentenced Loeb to a term of 60 months' imprisonment on Count Two and a term of 11 months' imprisonment on Count Thirteen to run consecutively, for a total term of 71 months' imprisonment, followed by three years supervised release, and payment of restitution in the amount of $494,482.

Loeb now appeals.

## DISCUSSION

■ On appeal, Loeb contests his sentence, asserting that the district court erred

when it: denied him credit for acceptance of responsibility and enhanced his base offense level for obstruction of justice; determined his criminal history category; and imposed consecutive periods of incarceration. In considering these challenges to Loeb's sentence, we review the district court's application of the Sentencing Guidelines *de novo* and the district court's findings of fact for clear error. *See United States v. Deutsch,* 987 F.2d 878, 884–85 (2d. Cir.1993) (citations omitted).

### (1) *Acceptance of Responsibility/Obstruction of Justice*

■ Loeb's contention that the district court improperly denied him credit for acceptance of responsibility as stipulated in the plea agreement and erred in imposing an enhancement for obstruction of justice is completely without merit.

■ To qualify at sentencing for a downward adjustment for acceptance of responsibility, a defendant must "clearly demonstrate[ ] acceptance of responsibility for his offense." U.S.S.G. § 3E1.1(a). It is well-established that by willfully failing to appear for sentencing, a defendant fails to accept responsibility for the offense, regardless of whether there was a plea agreement stipulating credit for the adjustment. *See United States v. Rivera,* 954 F.2d 122, 124 (2d Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 1701, 118 L.Ed.2d 410 (1992). Moreover, intentional flight from a judicial proceeding is grounds not only for a sentencing court to deny an adjustment for acceptance of responsibility, but also for the court to impose an offense level enhancement for obstruction of justice. *See United States v. Keats,* 937 F.2d 58, 67 (2d Cir.), *cert. denied,* 502 U.S. 950, 112 S.Ct. 399, 116 L.Ed.2d 348 (1991).

In the case before us, Loeb's actions indicate an intentional flight from judicial proceedings. The record demonstrates that on August 5, 1993, approximately one month before his scheduled sentencing date, Loeb fled the jurisdiction under an assumed name, took up residence in Arizona, and fraudulently obtained public assistance benefits from that State. Loeb failed to appear for sentencing and remained a fugitive for 39 days until apprehended by law enforcement agents on September 12, 1993. On this record, we cannot conclude that the district court erred in finding that Loeb failed to accept responsibility for his offense and imposing an enhancement for obstruction of justice.

### (2) *Criminal History*

■ Loeb's second argument on appeal is that the district court erred in determining his criminal history category by including in the calculation one criminal history point based on Loeb's conviction for driving while his ability was impaired. We disagree.

The Guidelines provide, in relevant part, that "[a]ny ... prior sentence that was imposed within ten years of the defendant's commencement of the instant offense is counted" towards his criminal history computation. U.S.S.G. § 4A1.2(e)(2). Certain specified minor convictions, however, including "minor traffic infractions" are excluded from a defendant's criminal history category. U.S.S.G. § 4A1.2(c)(2). Nevertheless, Application Note 5 to U.S.S.G. § 4A1.2 unequivocally states that "[c]onvictions for driving while intoxicated or under the influence (and similar offenses by whatever name they are known) are counted. Such offenses are not minor traffic infractions within the meaning of § 4A1.2(c)."

A review of the record in the instant case reveals that in January 1989, Loeb was convicted in the Justice Court of Southhampton, New York, of driving a vehicle while his ability was impaired, in violation of N.Y.Veh. & Traf.Law § 1192. Because Loeb's conviction for driving while his ability was impaired falls within the applicable time period and is not a minor traffic infraction, *see United States v. Moore,* 968 F.2d 216, 224–25 (2d Cir.) (holding prior New York state conviction for driving while ability impaired should be taken into account in assessing defendant's criminal history category), *cert. denied,* —— U.S. ——, 113 S.Ct. 480, 121 L.Ed.2d 385 (1992), we find that the district court properly counted it towards his criminal history calculus.

### (3) *Consecutive Sentences*

Loeb's final contention on appeal is that the district court improperly imposed a consecutive term of imprisonment because each of his two counts of conviction carried a statutory maximum sentence of 60 months' imprisonment and the counts of conviction were grouped offenses under the Sentencing Guidelines. According to Loeb, the district court was required to sentence him to no greater than 60 months' imprisonment because this term fell within the Guidelines' total punishment range of 57–71 months, and U.S.S.G. § 5G1.2(c) explicitly provides that:

> [i]f the sentence imposed on the count carrying the highest statutory maximum is adequate to achieve the total punishment, then the sentences on all counts shall run concurrently, except to the extent otherwise required by law.

We find that Loeb's contention misapprehends the Guidelines.

Where a defendant is sentenced on multiple counts under a single indictment, the district court must correlate the defendant's combined offense level with the appropriate criminal history category, and arrive at a sentencing range for the convictions. This represents the defendant's "total punishment range." *See United States v. Kings*, 981 F.2d 790, 797 (5th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 2450, 124 L.Ed.2d 666 (1993). Against this background, the district court evaluates the facts and circumstances of the case and identifies what it deems to be the appropriate sentence for the defendant's convictions. This sentence is referred to as the "total punishment." *See id.* at 798. Before imposing this sentence, however, the district court must also calculate the defendant's statutory maximum sentence for the offenses and determine whether the sentences should run concurrently or consecutively. *See id.*

U.S.S.G. § 5G1.2 sets forth the method of implementing the total sentence of imprisonment where there is more than one count of conviction. Specifically, U.S.S.G. § 5G1.2(d) provides in pertinent part:

> If the sentence imposed on the count carrying the highest statutory maximum is less than the total punishment, then the sentence imposed on one or more of the other counts shall run consecutively, but only to the extent necessary to produce a combined sentence equal to the total punishment.

Moreover, the Commentary to this section provides that "[i]f no count carries an adequate statutory maximum, consecutive sentences are to be imposed to the extent necessary to achieve the total punishment." *See* U.S.S.G. § 5G1.2, comment. Thus, U.S.S.G. § 5G1.2(d) allows the imposition of consecutive sentences as long as the total sentence remains within the total punishment range. *See Kings*, 981 F.2d at 797–98 (holding that fact that statutory maximum of one count was within total punishment range did not prohibit court from imposing another consecutive sentence because the total sentence was less than the maximum total punishment).

In the case before us, Loeb pleaded guilty to Counts Two and Thirteen of the indictment, each of which carried a statutory maximum sentence of 60 months. As such, the maximum statutory sentence for his offenses was 120 months. Because both counts were closely related, they were grouped under U.S.S.G. § 3D1.2(d) to obtain an adjusted combined offense level of 21. This offense level, when combined with Loeb's criminal history category IV, resulted in a total punishment range of 57 to 71 months. Based on the facts and circumstances of the case, the district court determined Loeb's total punishment to be 71 months. To implement this total sentence of imprisonment, the district court imposed a 60–month sentence on Count Two and an 11–month consecutive sentence on Count Thirteen. Accordingly, given that the sentence imposed on the count carrying the highest statutory maximum was inadequate to achieve the total punishment, we hold that the district court properly imposed consecutive sentences to produce a combined sentence equal to the total punishment.

### CONCLUSION

We have examined all of Loeb's arguments and find them to be without merit. The

judgment of the district court is hereby AF-FIRMED.