**UNITED STATES of America,
Appellee,**

v.

**Mohammed MAARAKI, Defendant–
Appellant.**

**Docket Nos. 02–1281, 02–1282.**

United States Court of Appeals,
Second Circuit.

Argued: Jan. 16, 2003.

Decided: May 6, 2003.

Guy Oksenhendler, New York, NY, for Defendant–Appellant.

Jonathan R. Streeter, Assistant United States Attorney (Celeste L. Koeleveld, Assistant United States Attorney, on the brief, for James B. Comey, United States Attorney for the Southern District of New York), for Appellee.

Before: VAN GRAAFEILAND, KEARSE, and B.D. PARKER, Circuit Judges.

PER CURIAM.

Defendant-appellant Mohammed Maaraki appeals from two judgments of conviction entered on May 13, 2002, in the United States District Court for the Southern District of New York (Chin, *J.*), following guilty pleas to two consolidated indictments. Maaraki was charged first in March 2000 and again in July 2001 with trafficking in unauthorized access devices (i.e. calling cards). Following a hearing, the District Court concluded that the loss amount attributable to Maaraki's conduct was approximately $700,000 and determined that this amount required a ten-level offense level increase under U.S.S.G. § 2F1.1(b)(1)(K) (2000). Maaraki contends that because the entire amount of the loss was not reasonably foreseeable, the District Court erred by considering that amount "relevant conduct," pursuant to U.S.S.G. § 1B1.3, in determining his sentencing range. Maarakai also contends that because he was merely a "minor participant" in the offense, the District Court erred by failing to award him a two-point reduction under U.S.S.G. § 3B1.2. For the reasons that follow, we conclude that both contentions lack merit.

We affirm.

## DISCUSSION

In February 2000, the United States Secret Service field office in Miami discovered that its phone system had been compromised, resulting in 882 unauthorized telephone calls and a loss of approximately $150,000. A subsequent investigation led to Maaraki and a search of his residence, where investigators found a list containing approximately 425 encrypted stolen telephone calling card numbers. In March 2000, Maaraki was arrested and charged with trafficking in unauthorized access devices, in violation of 18 U.S.C. § 1029(a)(2), and with possessing fifteen or more unauthorized access devices in violation of 18 U.S.C. § 1029(a)(3). In January 2001, Maaraki pled guilty to the possession count pursuant to a plea agreement.

In May 2001, while on bail awaiting sentencing, Maaraki was observed by a Secret Service Agent "shoulder surfing" at Pennsylvania Station in New York City. According to the government, a "shoulder surfer" typically operates in a location with many public telephones and looks for individuals using calling cards. The shoulder surfer surreptitiously observes the calling, records the number dialed, tests it, and then either sells or passes on the number to other individuals. Maaraki was re-arrested and indicted again for trafficking in stolen calling cards. In October 2001, he again pled guilty. The government's evidence established that Maaraki had stolen at least 600 calling card numbers. They were passed on to his associates here and abroad where they were used as part of a scheme involving fraudulent international conference calls.

Maaraki's two indictments were consolidated for sentencing and grouped pursuant to U.S.S.G. § 3D1.2(d). The parties disputed the appropriate offense level generated by the loss. The government calculated it as between $500,000 and $800,000, thereby increasing his base offense level by ten levels. *See* U.S.S.G.

§ 2F1.1(b)(1)(K) (2000).[1] Maaraki contested this calculation and the District Court conducted a hearing pursuant to *United States v. Fatico,* 603 F.2d 1053 (2d Cir. 1979), to resolve the dispute. After the hearing, the District Court concluded that the government had established that the loss attributable to Maaraki was $705,651.11. Maaraki does not contest the amount, but he does contest the attribution.

At sentencing, the District Court determined the appropriate Guideline range to be 33 to 41 months, based on an offense level of 20 and a Criminal History Category of I. On each conviction, Maaraki received concurrent sentences of 33 months' imprisonment, three years of supervised release, restitution of $732,502, and a $200 special assessment.[2] On appeal, Maaraki advances two contentions: (1) that the loss attributed to him was overstated, because it was not reasonably foreseeable; and (2) that the District Court should have afforded him a minor participant adjustment. Neither contention has merit.

■ We review the District Court's interpretation and application of the Sentencing Guidelines *de novo* and its factual findings for clear error. *United States v. Mulder,* 273 F.3d 91, 116 (2d Cir.2001). Maaraki first argues that the entire loss amount attributed to him was not reasonably foreseeable and, therefore, should not have been used to increase his base of-

fense level under U.S.S.G. § 2F1.1(b)(1) (2000). But the applicable test is not one of reasonable foreseeability. The Guidelines provide that in calculating a defendant's specific offense characteristics, the district court is to, among other things, take into account 'relevant conduct,' which includes:

> (1) (A) all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and
>
> (B) in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity,

that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense.

U.S.S.G. § 1B1.3(a)(1).

Under this section, "[t]he requirement of reasonable foreseeability applies only in respect to the conduct ... of others;" it "does not apply to conduct that the defendant personally undertakes, aids, [or] abets." U.S.S.G. § 1B1.3, Application Note 2. Subsections (A) and (B) are not

---

**1.** Maaraki was sentenced after November 1, 2001, the effective date of the 2001 amendments to the Sentencing Guidelines. In order to avoid an *ex post facto* problem, however, the District Court applied the 2000 edition of the Guidelines Manual, because the offense was committed prior to the effective date of the 2001 manual and because the 2000 edition resulted in a lower offense level than the 2001 manual. *Compare* U.S.S.G. § 2F1.1(b)(1)(K) (2000) *with* U.S.S.G. § 2B1.1(b)(1)(H) (2001). Unsurprisingly, Maaraki does not contest the application of

the 2000 Guidelines to his sentence, which, in any event, appears to be entirely proper. *See United States v. Gonzalez,* 281 F.3d 38, 45–46 (2d Cir.2002). Here, we note the edition of the Sentencing Guidelines only when citing a provision that differs in the 2000 and 2001 editions.

**2.** This amount included $26,850.91 based on the first indictment and the $705,651.11 loss connected with the second.

mutually exclusive. The commentary to this section states, in relevant part, that

> [i]n certain cases, a defendant may be accountable for particular conduct under more than one subsection of this guideline.... [I]f a defendant's accountability for particular conduct is established under one provision of this guideline, it is not necessary to review alternative provisions under which such accountability might be established.

*Id.*, Illustration (a)(1). *Cf. United States v. Chalarca*, 95 F.3d 239, 243 (2d Cir.1996) ("[T]he quantity of drugs attributed to a defendant need not be reasonably foreseeable to him when he personally participates, in a direct way, in a jointly undertaken drug transaction.").

The Guidelines also give the following example:

> Defendant C is the getaway driver in an armed bank robbery in which $15,000 is taken .... Defendant C is accountable for the money taken under subsection (a)(1)(A) because he aided and abetted the act of taking the money (the taking of money was the specific objective of the offense he joined).

U.S.S.G. § 1B1.3, Application Note 2, Illustration (b)(1).

In sum, when acquiring the property of another person was the specific objective of the offense, a defendant who aided or abetted that acquisition is to be held responsible for the loss without regard to the foreseeability of his associates' acts. Thus, the commentary to Guidelines § 2F1.1, which calibrates a defendant's specific offense characteristics by reference to the amount of loss, *see id.;* § 2F1.1(b)(1), states that "[i]n a case involving any ... unauthorized access device, loss includes *any* unauthorized charges made with the ... unauthorized access device," U.S.S.G. § 2F1.1, Application Note 17 (2000) (emphasis added), without regard to foreseeability.

■ In the present case, there is no question that the theft of the access devices was the specific objective of Maaraki's activity. Nor can there be any question that Maaraki stole the devices with the objective of allowing his associates to use them. At the *Fatico* hearing, the government presented evidence not only that Maaraki had stolen 655 AT & T calling card numbers from individuals in and around Penn Station, but also that, before passing the numbers on to his associates, he made test calls to be sure the stolen numbers were functioning. Thus, Maaraki's conduct plainly aided and abetted the subsequent fraudulent uses of the unauthorized devices by his associates, which cost the victims hundreds of thousands of dollars. Given his personal conduct in aiding and abetting the costly calls, Maaraki's accountability for those losses was established under § 1B1.3(a)(1)(A), which does not require proof of foreseeability; it therefore was not necessary to consider whether Maaraki was also accountable under subsection (B), which does mention foreseeability. We conclude, therefore, that the District Court's calculation of the fraud loss attributable to Maaraki was correct.

■ Maaraki also contends that the District Court erred by failing to make a two-point reduction under U.S.S.G. § 3B1.2(b) since he was a "minor participant" in the offense. Although conceding that he was responsible for the theft of over 600 calling card numbers during a 14 month period, which resulted in over $700,000 of loss, Maaraki argues that he is entitled to a minor participant reduction because there is no evidence that he participated in, or benefitted from, the sale of the calling cards once they were relayed overseas. This contention overlooks the fact that he

was the original source of the cards. Given the volume of cards he illicitly procured and, consequently, his extensive and important role in the trafficking operation, the District Court did not err and certainly did not clearly err in denying the reduction. *See United States v. Castano,* 234 F.3d 111, 113 (2d Cir.2000) ("We review for clear error a sentencing court's finding that a defendant did not play a minor role in the offense.").

## CONCLUSION

The judgment of the District Court is AFFIRMED.