NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued June 15, 2011
Decided August 24, 2011

*Before*

MICHAEL S. KANNE, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 11-1319

| | |
|---|---|
| UNITED STATES OF AMERICA, <br> *Plaintiff-Appellee*, | Appeal from the United States District Court <br> for the Southern District of Illinois. |
| *v.* | No. 3:10-CR-30071-001-WDS |
| DAVID M. HOFFARTH, JR., <br> *Defendant-Appellant*. | William D. Stiehl, <br> *Judge*. |

## O R D E R

David Hoffarth burglarized a sporting-goods store in Belleville, Illinois, and made off with 15 guns. He triggered the store's alarm during the break-in and was caught by police after a brief chase. Hoffarth pleaded guilty to theft of firearms from a federally licensed dealer, 18 U.S.C. § 922(u), and possession of a firearm by a felon, *id.* § 922(g)(1). The district court increased his offense level by two points for recklessly endangering other persons while trying to elude the police. *See* U.S.S.G. § 3C1.2. Hoffarth challenges that increase on appeal.

Police officers responding to the nighttime alarm saw Hoffarth running from the store carrying a handgun. The officers ordered him to stop, but he kept running, and they pursued him on foot. During the chase Hoffarth looked back at the officers, raised the gun to his head, and said he was suicidal. He then took cover on the back porch of a nearby

house, pointed his gun in the direction of one of the officers, and shouted that he would put down the gun only if the officers killed him. At the time there were six people in the house, including three children. The officers coaxed Hoffarth to come off the porch, but he was holding a beer and refused to raise his hands until he finished drinking it. When he continued resisting arrest, the officers subdued him with a Taser and handcuffed him. They recovered several guns from Hoffarth and more from the ground nearby, all unloaded.

At sentencing Hoffarth objected to the application of § 3C1.2 as recommended by the probation officer. That guideline applies if a defendant, in fleeing from police, "recklessly created a substantial risk of death or serious bodily injury to another person." U.S.S.G. § 3C1.2. Hoffarth pointed out that he didn't have any bullets and that none of the police officers actually fired their guns. Thus, he argued, he did not create a substantial risk of harm to anyone but himself. The government stressed, however, that the officers did not know that Hoffarth's guns were unloaded, and—had they fired at him—a bullet might have hit a resident of the house.

The district court concluded that Hoffarth's conduct "was clearly a reckless endangerment" and, after applying the adjustment, sentenced him within the guidelines range to a total of 90 months' imprisonment. The court emphasized that Hoffarth fled to the porch of an occupied house in a residential area, pointed a gun at an officer who could not have known it was unloaded, and warned that the officers would have to shoot him to get him to surrender. The police could have responded with gunfire instead of a Taser, the court remarked, and a stray bullet could have hit a bystander.

In challenging this assessment, Hoffarth insists that "the evidence fails to establish that any police officer saw him pointing the gun toward the officer." Instead, Hoffarth explains, the evidence on point is limited to a sentence in the presentence report stating—in passive voice—that he "was observed" pointing his gun in the direction of an officer. The presentence report does not explicitly attribute the observation to one of the pursuing officers, and so it follows, Hoffarth reasons, that the government never proved that the officers saw him pointing a gun at them.

We are not persuaded. The application of § 3C1.2 is a factual finding that we review for clear error, *United States v. White*, 443 F.3d 582, 592 (7th Cir. 2006); *United States v. Lard*, 327 F.3d 551, 553 (7th Cir. 2003), and in this case the district court's determination is amply supported by the record. The inference fairly arising from the presentence report—indeed, the only logical inference arising from the report—is that one of the pursuing police officers reported seeing Hoffarth pointing the gun, and at sentencing he failed to raise any doubt about that inference. In fact, the criminal complaint filed in this case confirms that inference by naming the specific officer who saw Hoffarth point the gun.

Moreover, no matter who saw Hoffarth pointing the gun, his conduct warranted the adjustment; even reaching for a gun while running from the police is enough because that conduct creates a substantial risk that an officer might inadvertently shoot another officer or a bystander. *United States v. Easter*, 553 F.3d 519, 523-24 (7th Cir. 2009); *see United States v. Carter*, 601 F.3d 252, 255 (4th Cir. 2010) (upholding adjustment where defendant broke into private residence); *United States v. Bates*, 561 F.3d 754, 757 (8th Cir. 2009) (upholding adjustment where defendant fled through residential neighborhood with gun drawn); *United States v. Brown*, 314 F.3d 1216, 1221 (10th Cir. 2003) (upholding adjustment where defendant hid gun in presence of children). That Hoffarth's gun was unloaded makes little difference: displaying a gun, loaded or not, during a crime "creates an immediate danger that a violent response will ensue." *McLaughlin v. United States*, 476 U.S. 16, 17-18 (1986); *see United States v. Simmons*, 581 F.3d 582, 586-87 (7th Cir. 2009) (concluding that use of unloaded gun during robbery increased risk that police would hurt bystander); *United States v. McDonald*, 521 F.3d 975, 980 (8th Cir. 2008) (concluding that defendant's lie about possessing gun increased risk of harm to police); *United States v. Smythe*, 363 F.3d 127, 129 (2d Cir. 2004) (concluding that "offense-level enhancements are warranted even where a weapon is unloaded or *inoperative*"). And Hoffarth did more than brandish a gun. While standing on the porch of an occupied house, he goaded police to shoot him by shouting that he wouldn't be taken alive; he implied that his gun was loaded by pointing it at himself and the officers, increasing the risk that police would fire; and he resisted arrest to the point that officers had to use force to subdue him.

As a final matter, Hoffarth suggests that low intelligence somehow impaired his awareness that the house might be occupied. He points out that he had to be *aware* of the risk created by his conduct to have acted recklessly under the guidelines, *see* U.S.S.G. § 2A1.4, cmt. n.1; *id.* § 3C1.2, cmt. n.2, and he emphasizes that a psychologist has diagnosed him with borderline intellectual functioning. But this argument is a nonstarter. Nothing in the record supports, nor did Hoffarth raise at sentencing, the contention that his impairment prevented him from appreciating the risk he created in brandishing a gun and forcing an armed standoff on a porch in a residential neighborhood.

**AFFIRMED**.