In the

# United States Court of Appeals

## For the Seventh Circuit

No. 12-3413

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JAMEL H. BROWN,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 11 CR 00202—**Sarah Evans Barker**, *Judge.*

ARGUED APRIL 5, 2013—DECIDED MAY 20, 2013

Before EASTERBROOK, *Chief Judge*, and FLAUM and
WOOD, *Circuit Judges*.

FLAUM, *Circuit Judge*. Following a high-speed chase,
an assault on an officer, and a four-hour standoff at
a hotel, Jamel Brown was arrested and charged with
unlawful possession of a firearm by an armed career
criminal, bank robbery, interference with interstate com-
merce by robbery, and brandishing a firearm during
a crime of violence. Brown pleaded guilty to unlawful
possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1)

and 924(e) without a plea agreement and moved to continue the remaining counts of the indictment until after his sentencing on the firearm possession charge. Prior to sentencing, Brown objected to four of the probation officer's factual representations contained in his Presentence Investigation Report ("PSR") and objected to the PSR's application of a two-level enhancement for reckless endangerment during flight. After hearing the evidence presented at sentencing, the district court imposed an above-guidelines sentence of 400 months' imprisonment. Brown appeals his sentence, claiming a violation of Federal Rule of Criminal Procedure 32(i)(3)(B), which requires a district court to rule on any disputed matter in the PSR that will affect the court's sentencing determination. For the reasons set forth below, we affirm the sentence imposed by the district court.

## I. Background

### A. Factual Background

On August 8, 2011, Officer Joshua Fritsche observed Brown driving his vehicle at a high rate of speed in suburban Indianapolis. After Officer Fritsche initiated a pursuit, Brown increased his speed to approximately 80 miles per hour, veered in and out of traffic, disregarded stop signs, and at last, crashed his car into a trailer in the parking lot of a hotel. When his car came to rest, Brown fled on foot into the hotel lobby, ignoring the officer's orders to stop. Once in the lobby, Brown could not go any farther because entry to the remainder

of the hotel was limited to those individuals possessing an access card. Officer Fritsche followed Brown into the lobby and ordered him to get on the ground. When Brown refused to comply, the officer deployed his taser, and Brown fell to the floor. After a quick recovery from the stun, however, Brown stood up and repeatedly punched Officer Fritsche in the face. The officer lost consciousness and collapsed.

Brown then fled from the lobby and ran back into the parking lot from which he had entered. Three men followed him out the door: Brandon McKee, the hotel manager; Andrew Spears, a hotel maintenance employee; and Crandall Myers, a hotel guest. As Brown fled, a car pulled in front of him and blocked his path. Brown attempted to enter the car, and the hotel guest occupying the car saw Brown brandish a firearm. Brown then turned and pointed his Tec-9 semi-automatic pistol at each of the three men who had followed him from the lobby into the parking lot. The men watched as Brown pointed the firearm in their direction and pulled the trigger. Fortunately, the gun only clicked and the weapon did not discharge. The gun's loaded magazine and one round of ammunition were later recovered from the ground next to where Brown had been standing.

From the parking lot, Brown ran to the rear of the hotel, where he broke in by crashing through a window. Bleeding profusely, Brown began knocking on hotel room doors and attempted to bribe hotel guests to allow him to hide from the police in their rooms. When

all of the guests refused, Brown entered an occupied room, and with one hand in his waistband, threatened the guest and ordered him not to leave. About four hours later, SWAT officers entered the room and arrested Brown.

**B.  Procedural Background**

On October 19, 2011, a grand jury returned an indictment charging Brown with one count of unlawful possession of a firearm by an armed career criminal in violation of 18 U.S.C. §§ 922(g)(1) and 924(e), one count of bank robbery in violation of 18 U.S.C. § 2113(a), one count of interference with interstate commerce by robbery in violation of 18 U.S.C. § 1951, and one count of brandishing a firearm during a crime of violence in violation of 18 U.S.C. § 924(c). Brown pleaded guilty to the firearm possession charge on June 29, 2012 and moved to continue the remaining counts of the indictment until after his sentencing on the firearm conviction. The court accepted Brown's plea and granted his motion.

Prior to sentencing, the probation officer assigned to Brown's case prepared a PSR for the parties and the court. The probation officer calculated Brown's adjusted offense level at thirty-six, which included a four-level enhancement for the use of a firearm in connection with another felony offense, a six-level enhancement for assaulting a law enforcement officer during the course of flight from the offense, and a two-level enhancement for recklessly creating a substantial risk

of death or serious bodily injury in the course of fleeing from a law enforcement officer. After the probation officer subtracted two points for acceptance of responsibility, Brown's total offense level came to thirty-four. Together with Brown's criminal history category of VI, the probation officer determined Brown's guidelines range for sentencing to be 262- to 327-months' imprisonment.

After reviewing the PSR, Brown submitted objections to the probation officer who then issued a supplemental addendum to the PSR. In the addendum, the probation officer indicated that Brown had objected to several factual allegations contained in the PSR and to the two-level enhancement for recklessly creating a substantial risk of death or serious bodily injury during flight from an officer under U.S.S.G. § 3C1.2. According to the addendum, Brown denied that he ran stop signs, crossed traffic lanes, and crashed into a parked car; that he attempted to remove Officer Fritsche's firearm after he lost consciousness; that he attempted to carjack the hotel guest; and that he pulled the trigger of the gun and attempted to shoot the witnesses during the incident. The probation officer stood by the information contained in the PSR, but clarified that the parked vehicle Brown had crashed into in the hotel parking lot was a utility trailer and not a car.

When Brown's sentencing hearing commenced on October 3, 2012, the district court verified that Brown and his counsel had thoroughly reviewed the PSR and

the other documents pertinent to sentencing, including the government's sentencing memorandum in which the government argued for a significant upward variance from the guidelines range. The judge then explained the process it would follow in sentencing Brown and announced that the probation officer had calculated Brown's offense level to be thirty-four and had assigned him to criminal history category VI. The judge noted that defense counsel had raised an objection to the details contained in five paragraphs of the PSR relating to the offense conduct, and confirmed with defense counsel that Brown had a different view of the facts. The court then stated, "I think I'll not resolve the matter as a factual matter, but I'll hear from Mr. Brown as to his version of the facts, if he wishes to recount them. So I won't specifically rule on that objection on that basis." Shortly thereafter, the judge stated, "[m]y own review of the presentence report affirms the treatment that has been given these issues by the [probation officer] in her presentence report. So I adopt this formulation as my own and it will be the basis on which I make the remaining decisions." The judge then indicated that Brown's guidelines range for sentencing would be 262 to 327 months. After addressing restitution and the applicable special assessment, the judge asked defense counsel whether he "agree[d] with that guideline extrapolation," and counsel responded that he did.

The judge then turned to Brown, who offered a lengthy allocution to the court. Brown first apologized to Officer Fritsche and then explained his personal history.

He indicated that his addiction to drugs had caused him to take several wrong turns, but that the recent death of his daughter and his arrest on the firearm possession charge led him to change his attitude and his outlook on life. Brown also explained that he disagreed with the probation officer's representation of the facts in the PSR. He maintained that he showed the bystanders at the hotel the gun but never intended to shoot anyone and never chambered a round. During Brown's allocution, the district judge responded to Brown's statements and shared her view of the facts and circumstances relevant to sentencing, giving Brown an opportunity to comment.

Without addressing the disputed facts or the objection to the two-level enhancement, Brown's counsel presented his argument to the court. He focused on Brown's drug addiction and suggested that a sentence of twenty years in prison would be more than sufficient to reflect the seriousness of the offense, to protect the public, and to allow Brown the opportunity to overcome his addiction and gain the maturity necessary to refrain from drug use and criminal activity.

Next, the government called several witnesses to testify about the events that transpired on August 8, 2011. Spears, McKee, and Officer Fritsche testified as eyewitnesses to the crime and Michael Hubbs, a captain in the Marion County Sheriff's Office, testified as the lead investigator on the case. During his testimony, Officer Hubbs relayed statements from three hotel guests who had witnessed Brown's conduct at the

hotel: Myers, who followed Brown out of the hotel and back into the parking lot; Jeffery Rickert, who was driving the car that blocked Brown on his way out of the hotel; and Joseph McGill, who was occupying the hotel room Brown entered after breaking into the rear portion of the hotel.

Following the testimony, the government argued for an upward variance from the guidelines. The government noted that Brown had already received a two-point enhancement under § 3C1.2 for posing a substantial risk of death or bodily injury during flight but argued that an upward variance would nonetheless be appropriate because Brown's conduct posed a risk to more than one individual. The government also argued that the enhancement for assaulting an officer in the course of flight could not fully capture the extent of the physical injury Brown inflicted on Officer Fritsche. Finally, the government explained that Brown's criminal history category underrepresented the seriousness of his criminal history and the likelihood that he would commit other crimes. The court then allowed defense counsel the opportunity to respond. At that point, Brown's attorney stated that he believed the "guidelines accurately encompass all of the behavior that the defendant has been involved in, and that the Government is bringing to the Court's attention." Brown's attorney emphasized that "[t]he flight, the obstruction of justice, [and] the assault on the officer" were all taken into account by the guidelines. He did state, however, that there was no evidence that Brown had attempted to carjack the hotel guest and that one of the

witnesses had stated he heard gunshots, when in fact the gun did not go off. Brown's attorney clarified that "whether or not [Brown] tried to shoot anyone or carjack anyone or take a gun doesn't affect the guideline calculation at all. The Government gets the enhancements that it's looking for and that probation found without any of those things." Instead, defense counsel explained that the government was asking the court to consider those facts in deciding whether to vary upward from the guidelines range and that he did not believe the government had demonstrated the accuracy of those facts.

In its final argument, the government agreed with defense counsel that Brown's "efforts . . . to kill four people" did not affect the guidelines calculation and noted that those actions instead supported its argument for an upward variance from the guidelines. The government reminded the court that four witnesses had stated that Brown pointed a gun in the direction of the three men who had followed him out of the hotel and three of those witnesses recalled hearing clicks. In recommending a sentence of 480 months' imprisonment, the government emphasized that the only way to satisfy the requirements of § 3553(a) would be to impose a sentence well above Brown's guidelines range.

After hearing argument from both sides, the judge began her explanation of the sentence. At the outset, she stated, "it is true that we have a correct guidelines application here. At least nobody's disagreed with it. I don't know of any reason why it is subject to that sort

of disagreement." The judge then noted the "horrific facts" related to the nature and circumstances of the offense. She explained that Brown had driven recklessly through a heavily trafficked area, brutally assaulted Officer Fritsche, and pointed a gun at the men who were pursuing him. The judge continued that after the gun malfunctioned, Brown persisted in his escape, running to another part of the hotel and breaking through a window before "terrorizing" people inside the hotel. She concluded that the guidelines properly computed at 262 to 327 months did not "take into account the cumulative effect of [Brown's] life pattern or the facts that surround this case and, in particular, the attempts that were made to shoot and kill four people" and ultimately imposed a sentence of 400 months.

## II. Discussion

On appeal, Brown does not argue that the district court imposed a substantively unreasonable sentence. Instead, he contends that the district court committed procedural error and violated his right to due process by not explicitly ruling on his objections to the PSR prior to sentencing. *See* Fed. R. Crim. P. 32(i)(3)(B). Brown also maintains that the district court relied on disputed facts to apply a two-level sentencing enhancement for reckless endangerment during flight. He suggests, however, that this court's review of the sentencing enhancement's applicability is an "impossibility" because the district court did not make the necessary findings on the disputed facts supporting the enhancement.

We disagree and because we find no procedural error, we affirm the sentence imposed by the district court.

## A. Compliance with Rule 32(i)(3)(B)

Federal Rule of Criminal Procedure 32(i)(3)(B) directs district courts to rule on any disputed matter in the PSR prior to sentencing. Fed. R. Crim. P. 32(i)(3)(B). This rule protects a defendant's right to be sentenced on the basis of accurate information and provides a record of the disposition and resolution of controverted facts in the PSR. *United States v. Eschweiler*, 782 F.2d 1385, 1387 (7th Cir. 1986) (addressing the precursor to Rule 32(i)(3)(B)). At the time of its enactment, Rule 32(i)(3)(B)'s predecessor required a sentencing judge to make written findings concerning disputed factual matters or a written determination that it would not rely on the disputed matter during sentencing. *See* Fed. R. Crim. P. 32(c)(3)(D) (1988). But the rule has been amended twice since its enactment, limiting the need for an explicit determination to only when a defendant's objection addresses a controverted matter that will affect sentencing. *See* Fed. R. Crim. P. 32 Advisory Comm. Note, 2002 Amend. (2006); Fed. R. Crim. P. 32 Advisory Comm. Note, 1994 Amend. (1994).

Since its most recent revision in 2002, we have characterized the requirement outlined in Rule 32(i)(3)(B) as one imposing a "minimal burden." *United States v. Heckel*, 570 F.3d 791, 796 (7th Cir. 2009). A sentencing

court must still make findings on the record to resolve a factual dispute between the parties, but "[t]he district court can often satisfy the rule by adopting the proposed findings in the [PSR], even as to contested facts, so long as the PSR articulates a sufficiently clear basis for the sentence and the reviewing court can be sure that the district court made a decision of design rather than of convenience." *United States v. Sykes*, 357 F.3d 672, 674 (7th Cir. 2004) (internal citations and quotation marks omitted); *see also Heckel*, 570 F.3d at 796 ("Although the district court did not explicitly address [the defendant's] objection to the PSR's treatment of his theft conviction, the court referenced the information in the PSR and specifically adopted the PSR's findings.").

Here, after noting Brown's objections to the PSR, the district judge categorically adopted the probation officer's findings. Brown contends, however, that the timing of the district court's adoption renders it insufficient to comply with Rule 32(i)(3)(B)'s directive. Early in the sentencing hearing, the district judge announced that she would not rule on the disputed facts contained in the PSR, but that she would hear from the defendant as to his version of the facts. The district judge made this statement shortly before she endorsed the PSR in its entirety, which occurred before Brown addressed the court and before the government presented its evidence. At oral argument, the government explained that its best interpretation of the district judge's initial statement was that she did not intend to rule on the disputed facts at that particular time. If the district court had indicated its acceptance of the government's version

of the facts *only* by adopting the factual allegations in the PSR immediately after it vowed to reserve its decision on the disputed facts until after Brown's argument, we would hesitate before finding compliance with Rule 32(i)(3)(B). *See, e.g.*, *United States v. Wolfe*, 71 F.3d 611, 614-15 (6th Cir. 1995) (explaining that "neither the right to allocution . . . nor the procedures for dealing with controverted matters . . . indicate that a judge may not state his ruling on the objections raised to the PSR, or other sentencing matters, before the defendant or his counsel is given a chance to speak," but urging the opposite sequence to protect the appearance of fairness).

But the district court's discussion of the disputed facts did not end there. After hearing from the defendant and listening to the evidence presented by the government, the judge made several statements that confirmed her acceptance of the probation officer's version of the facts. In addressing the "horrific" nature of the offense at issue, the judge stated that Brown had driven a car through a heavily trafficked area "really without regard to anybody else,"and that his assault on the officer was "breathtaking." She acknowledged that Brown had pointed the firearm at the witnesses in the hotel parking lot "and by some unbelievable good fortune" the gun malfunctioned. The judge explained to Brown that the lack of any firing "was good for you in the sense that you're not before some court for murder charges, but it was [also] good for all of the people who were looking at the short end of that gun and thinking their lives were about to end." When the gun malfunctioned, the judge

stated that Brown continued with his attempted escape, shattering a window in the back of the hotel and then "terrorizing" the people inside while looking for a place to hide.

After addressing these facts, the district judge concluded that the properly calculated guidelines range of 262 to 327 months could not take into account the egregious offense conduct and, "in particular, the attempts that were made to shoot and kill four people." Accordingly, she sentenced Brown to 400 months in prison.

Given the minimal burden imposed on the district court to comply with Rule 32(i)(3)(B)'s instruction to rule on all disputed matters that will affect sentencing, we find that the district court met that burden in this case. *See Sykes*, 357 F.3d at 674. The statements the district judge made after hearing the evidence and prior to imposing the sentence clearly indicated her acceptance of the version of the facts in the PSR and provided this court with a sufficient record to engage in effective appellate review. *See United States v. Cureton*, 89 F.3d 469, 473 (7th Cir. 1996) (explaining the district court's obligation to address a defendant's objections and provide a record of the disposition so that the appellate court may conduct an effective review of the sentencing); *see also United States v. Zehrung*, No. 11-1974, ___ F.3d ___, 2013 WL 1668214, at *3 (1st Cir. Apr. 18, 2013) (finding that a court may "implicitly resolve[]" a factual dispute when its "statements and the sentence imposed show[] that the facts were decided in a particular way" and the resolution permits effective appellate review (internal quota-

tion marks omitted)). That the district court wholly adopted the PSR at the outset of the hearing does not alter our view of the district court's compliance with the Rule. The judge likely developed her own view of the facts at the outset and did not change her position after hearing the evidence and argument from both sides. What is essential is that the district judge articulated her view of the disputed facts and explained how they impacted her ultimate sentencing determination.

## B. Application of the Two-Level Reckless Endangerment Enhancement

To the extent Brown also contends that the district court erred in applying a two-level enhancement for reckless endangerment during flight, we disagree. Section 3C1.2 of the guidelines requires a sentencing court to enhance a defendant's base offense level by two points where "the defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer." U.S.S.G. § 3C1.2. Having concluded that the district court committed no error in ruling on the disputed facts affecting sentencing, the court's application of the two-level enhancement for reckless endangerment was proper. But we also agree with the government that regardless of the district court's resolution of the disputed facts, the enhancement could have been supported solely by the undisputed facts in the PSR.

At sentencing, Brown did not contest that he was traveling at a high rate of speed during Officer Fritsche's pursuit or that he pointed a firearm at the three individuals who followed him out of the hotel as well as the individual who blocked Brown's path of escape in the hotel parking lot. While speeding excessively, Brown could have lost control and injured other drivers or pedestrians on or near the road. *See United States v. Woody*, 55 F.3d 1257, 1275 (7th Cir. 1995) (affirming the application of the two-level enhancement where the defendant fled from police and led officers on a high-speed chase); *United States v. Velasquez*, 67 F.3d 650, 655 (7th Cir. 1995) (holding that flight at a high rate of speed on a residential street is enough to support an enhancement under § 3C1.2). And Brown's brandishing of the gun during his flight presented a substantial risk that an officer arriving on the scene might discharge his gun in defense, causing injury to one of the hotel guests at the scene or another officer. *See United States v. Hoffarth*, 432 F. App'x 621, 623 (7th Cir. 2011) (nonprecedential decision) ("[D]isplaying a gun, loaded or not, during a crime 'creates an immediate danger that a violent response will ensue.'") (quoting *McLaughlin v. United States*, 476 U.S. 16, 17-18 (1986)); *see also United States v. Smythe*, 363 F.3d 127, 129 (2d Cir. 2004) (concluding that "offense-level enhancements are warranted even where a weapon is unloaded or *inoperative*." (emphasis in original)). Thus, taken together, the undisputed facts surrounding Brown's flight demonstrate that Brown "recklessly created a substantial risk of death or serious bodily injury to another person" when he fled from

law enforcement on the day of his arrest. U.S.S.G. § 3C1.2. Indeed, defense counsel all but conceded as much when he stated at sentencing that "whether or not [Brown] tried to shoot anyone or carjack anyone or take a gun doesn't affect the guideline calculation at all. The Government gets the enhancements that it's looking for and that probation found without any of those things." He was correct. The additional disputed facts contained in the PSR merely bolster the district court's application of the two-point enhancement while supporting its decision to vary upward from the guidelines range. Consequently, we find no error in the district court's resolution of the disputed facts or its calculation of Brown's guidelines range for sentencing.

## III. Conclusion

For these reasons, we AFFIRM the sentence imposed by the district court.